JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Ramon Thompson ("appellant"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 {¶ 2} Appellant was indicted in 2002 for felonious assault with firearm specifications, having a weapon under disability and intimidation. He was not arrested until 2003. In July 2004, appellant was tried and convicted by a jury of felonious assault with firearm specifications and was convicted by the trial court of having a weapon under disability. The trial court sentenced appellant to an aggregate ten-year prison term, three years on the firearm specifications, and seven years on the felonious assault offense.
 {¶ 3} According to the record, in November 2001, police were alerted that shots had been fired at 3602 East 114th Street in Cleveland. The police arrived within five minutes of receiving the call and proceeded to the second floor apartment, where Angell Carpenter and her three preschool-aged children were inside. Prior to entering the house, the police had to maneuver past a refrigerator which Carpenter had used to block the doorway. Carpenter, who had been visiting with her neighbor Marquise Prevost at the time, explained that appellant had just accosted her and Prevost during an argument.
 {¶ 4} Carpenter testified that appellant became angry and chased Prevost out of the apartment. Appellant, alias Jeffrey Tucker, alias Reno, who had lived with Prevost for a few months, was angry because Prevost told him that the landlord said he had to move out of the apartment or she would be evicted. He also became very angry about $40 he claimed he was owed. Carpenter also reported that appellant was armed with a small silver or black automatic handgun at the time. She further testified that appellant hit her in the back of the head with the gun, and the gun went off.[1]
 {¶ 5} Latonya Player-Reid testified that she saw her daughter, Marquise, the night of the shooting. She further testified that she called appellant's phone after the shooting and argued with him. Officer Frank Woyma testified that Angell Carpenter was at the house with her three children the night of the shooting, and her face was red and she had a "knot" behind her ear. Officer Woyma further stated that there was a bullet hole in the wall and a shell casing in the house. He also stated that the gutter outside of the house was bent where Prevost said she jumped from the porch.
 {¶ 6} Appellant now appeals.
 I. {¶ 7} Appellant's assignments of error are as follows:
 {¶ 8} I. "Mr. Thompson was denied federal and state due process under the Fifth and Fourteenth Amendments to the United States Constitution when the court permitted an amendment to the indictment without resubmission of the cause to the grand jury."
 {¶ 9} II. "The indictment and jury instruction alleging felonious assault were deficient because they allowed the jury to convict Mr. Thompson without reaching a[n] unanimous verdict thereby violating his rights under the Sixth Amendment as well as his right to due process."
 {¶ 10} III. "Ramon Thompson's rights to due process and a fair trial were violated because the jury was repeatedly exposed to irrelevant evidence of his prior criminal record and unsubstantiated suggestions of ongoing criminal activity."
 {¶ 11} IV. "The trial court erred in violation of the due process clause of the United States Constitution by failing to give the jury an instruction on aggravated assault when the facts indicated sufficient evidence of serious provocation to convict appellant of the inferior degree offense of aggravated assault."
 {¶ 12} V. "Trial counsel was ineffective for failing to object to ambiguous jury instructions referring to an additional or alternative felonious assault victim and for failing to request that the court give a specific unanimity instruction with respect to the alleged felonious assault victims."
 II. {¶ 13} Appellant argues in his first assignment of error that the lower court erred when it permitted an amendment to the indictment without resubmission to the grand jury. We do not find merit in appellant's argument.
 {¶ 14} Section 10, Article I of the Ohio Constitution states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Crim.R. 7(D) supplements this constitutional right. See Id., and Statev. Strozier (Oct. 5, 1994), Montgomery App. No. 14021. Crim.R. 7(D) specifies when a court may permit an amendment to an indictment:
"The court may at any time before, during, or after a trialamend the indictment, information, complaint, or bill ofparticulars, in respect to any defect, imperfection, or omissionin form or substance, or of any variance with the evidence,provided no change is made in the name or identity of the crimecharged. If any amendment is made to the substance of theindictment, information, or complaint, or to cure a variancebetween the indictment, information, or complaint and the proof,the defendant is entitled to a discharge of the jury on thedefendant's motion, if a jury has been impanelled, and to areasonable continuance, unless it clearly appears from the wholeproceedings that the defendant has not been misled or prejudicedby the defect or variance in respect to which the amendment ismade, or that the defendant's rights will be fully protected byproceeding with the trial, or by a postponement thereof to alater day with the same or another jury. Where a jury isdischarged under this division, jeopardy shall not attach to theoffense charged in the amended indictment, information, orcomplaint. No action of the court in refusing a continuance orpostponement under this division is reviewable except aftermotion to grant a new trial therefor is refused by the trialcourt, and no appeal based upon such action of the court shall besustained nor reversal had unless, from consideration of thewhole proceedings, the reviewing court finds that a failure ofjustice resulted."
 {¶ 15} An amendment may be made to an indictment where the change does not alter the substance or identity of the crime charged. Crim.R. 7. Where the court allows the change of a victim's name or substitutes a victim, courts interpreting Ohio law have held that such changes are proper because the victim is not an element of the offense. In Dye v. Sacks, over 40 years ago, the Ohio Supreme Court determined that it was proper for an indictment to be amended to include a change to the victim's identity, as the victim is not an element of the offense and, as such, the change in the victim's identity is not a change to the crime charged. Dye v. Sacks (1962), 173 Ohio St. 422, 425.
 {¶ 16} In State v. Owens, the court found that it was proper to substitute the victim from whom the defendant demanded the property rather than the property owner. State v. Owens
(1975), 51 Ohio App.2d 132, 149-50. The victim's name or identity is not an element of the offense of felonious assault. Owens,
supra. This court determined that in an indictment for burglary and kidnapping, the indictment is proper where no victim is named. State v. Johnson, Cuyahoga App. Nos. 81692, 81693, 2003-Ohio-3241, at ¶ 20.
 {¶ 17} In the case at bar, when the trial court allowed the amendment to add the name of Angell Carpenter to the indictment, it did not change the nature or identity of the crime charged. Appellant was already aware of the facts and circumstances of the proof to be offered at trial.
 {¶ 18} Accordingly, appellant's first assignment of error is overruled.
 {¶ 19} Because of the substantial interrelation between appellant's second and fourth assignments of error, we shall address them together. Appellant argues in his second assignment of error that the indictment and jury instruction alleging felonious assault were deficient. He further argues in his fourth assignment of error that the trial court erred by failing to give an instruction on aggravated assault. We find appellant's claims to be without merit.
 {¶ 20} Appellant argues that the jury was not properly instructed regarding the need for unanimity. However, appellant failed to object to the charge or raise this contention at trial. Accordingly, he waived argument unless the court's instructions constitute plain error. Crim.R. 30. Moreover, an evaluation of the evidence in the record shows no plain error on the part of the trial court.
 {¶ 21} A general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for conviction. State v. Hamad, Cuyahoga App. No. 81189, 2003-Ohio-4401.
 {¶ 22} In the case at bar, the lower court gave such general unanimity instruction at trial.
 {¶ 23} Appellant's second assignment of error is overruled.
 {¶ 24} R.C. 2903.11, felonious assault, provides in pertinent part:
"(A) No person shall knowingly:
 (1) Cause physical harm to another or to another's unborn;
(2) Cause or attempt to cause physical harm to another or toanother's unborn by means of a deadly weapon or dangerousordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 25} R.C. 2903.12 defines the offense of aggravated assault as follows:
"(A) No person, while under the influence of sudden passion orin a sudden fit of rage, either of which is brought on by seriousprovocation occasioned by the victim that is reasonablysufficient to incite the person into using deadly force, shallknowingly:
 (1) Cause serious physical harm to another or to another'sunborn;
 (2) Cause or attempt to cause physical harm to another or toanother's unborn by means of a deadly weapon or dangerousordnance, as defined in section 2923.11 of the Revised Code.
 (B) Whoever violates this section is guilty of aggravatedassault, a felony of the fourth degree."
 {¶ 26} Comparing the elements of the two offenses, felonious assault and aggravated assault, it is clear that they are, except for one distinction, identical. The difference is that the offense of aggravated assault, an offense of inferior degree to felonious assault, requires the additional mitigating element of provocation. State v. Mack (1998), 82 Ohio St.3d 198, 200. The degree of provocation required is the following:
" * * * provocation, to be serious, must be reasonablysufficient to bring on extreme stress and the provocation must bereasonably sufficient to incite or to arouse the defendant intousing deadly force. In determining whether the provocation wasreasonably sufficient to incite the defendant into using deadlyforce, the court must consider the emotional and mental state ofthe defendant and the conditions and circumstances thatsurrounded him at the time."
Id., citing State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, at ¶ 5 of the syllabus.
 {¶ 27} In the case at bar, the victim, Prevost, testified: "We got to tussling and fighting" after appellant told her, "Bitch, I'm about to f____ you up.".[2] The testimony demonstrates that the woman in this altercation was not the aggressor. Moreover, the evidence established that appellant had a loaded 9-mm semiautomatic handgun and a bulletproof vest on his person at the time he attacked this victim. The evidence presented at trial demonstrates that appellant was not sufficiently provoked in such a manner as to justify appellant's use of deadly force. The victim's provocation was not reasonably sufficient to incite the use of deadly force in this particular situation. We find the trial court's actions to be proper.
 {¶ 28} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 29} Appellant argues in his third assignment of error that the jury was repeatedly exposed to irrelevant evidence of his prior criminal record. Appellant argues that he was denied a fair trial because the jury heard comments about why he had to leave the premises and comments about his previous incarceration. We do not find appellant's arguments to have merit.
 {¶ 30} In the case at bar, the jury was immediately instructed to disregard appellant's statement that he did not want to go back to jail. Moreover, the evidence regarding the reasons appellant was told to leave the house was properly presented to rebut appellant's theory offered to the jury, i.e., that the victim was arguing over bills with appellant and that she and Carpenter wanted appellant to leave so Carpenter could move in.[3] We find that the evidence in this case was properly submitted to the jury as relevant probative evidence.
 {¶ 31} Accordingly, appellant's third assignment of error is overruled.
 {¶ 32} Appellant argues in his fifth and final assignment of error that he did not receive effective assistance of counsel. In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in Strickland v. Washington (1984), 466 U.S. 668, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 33} The Ohio Supreme Court set forth a similar two-part test:
"First, there must be a determination as to whether there hasbeen a substantial violation of any of defense counsel'sessential duties to his client. Next, and analytically separatefrom the question of whether the defendant's Sixth Amendmentrights were violated, there must be a determination as to whetherthe defense was prejudiced by counsel's ineffectiveness."
 State v. Bradley (1989), 42 Ohio St.3d 136, 141-142.
 {¶ 34} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from his performance. Id.
 {¶ 35} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."Strickland, supra, at 689.
 {¶ 36} Appellant in the case at bar failed to provide any evidence demonstrating that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Indeed, the record amply supports the propriety of counsel's actions. A complete review of the record in this case yields no indication of ineffective assistance of counsel. Appellant failed to meet the elements under Strickland and failed to show that the outcome in this matter would have been different.
 {¶ 37} We find the trial attorney's conduct to be proper and do not find any violation of any essential duties to the client in this matter.
 {¶ 38} Appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., concurs; Colleen Conway Cooney, J.,Concurs in judgment only.
[1] Tr. 362-63.
[2] Tr. 274-75.
[3] Tr. 299-300, 318-20, 390-92.