JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Charles Davis (appellant) appeals his convictions for aggravated burglary, burglary, and assault. After reviewing the facts of the case and pertinent law, we affirm.
 {¶ 2} In the early morning hours of November 5, 2006, Cleveland Heights police officers responded to a residential burglary alarm at 2447 Newbury Drive (the Newbury house). Upon arrival, Officer Dan Downing (Officer Downing) discovered that the rear patio storm window was smashed and the screen was sliced. Officer Downing then noticed what he called a "suspicious vehicle" parked on the street. The car, a blue Cadillac with Mississippi license plates, was not parked there approximately 20 minutes earlier when Officer Downing was patrolling that street. Following standard procedure, Officer Downing ran the license plates and learned that the Cadillac was registered to appellant with both Mississippi and East Cleveland addresses, and that appellant had a criminal history of burglaries.
 {¶ 3} Meanwhile, Officer Brian McHugh (Officer McHugh) looked into the window of the Cadillac and saw a wallet on the front seat in plain view. The Cadillac was unlocked, and Officer McHugh opened the door to secure the wallet. Officer McHugh handed Officer Downing appellant's driver's license, which listed yet another East Cleveland address as appellant's residence.
 {¶ 4} At this time, the police radio broadcasted that another burglary was occurring one block away from the scene, at 2328 Walden Road in East Cleveland *Page 4 
(the Walden house). The Cleveland Heights officers responded to the East Cleveland call because of its proximity. The police interviewed the homeowners, Naomi and Warren Williams, who said a man broke into their house, struck Warren to the ground, threatened him with a screwdriver, and then fled through the garage door. When the police returned to the Newbury house, the Cadillac was gone.
 {¶ 5} The police went to the East Cleveland address listed on appellant's driver's license and the Cadillac was parked there. This time, however, the car was locked and there was blood visible inside the vehicle that had not been there earlier. The police towed the car to the impound lot, obtained a search warrant, and searched the vehicle. The police took various blood samples from the car's interior and from a screwdriver which was found on the front passenger seat. The police also lifted fingerprints from the storm window at the Newbury house, found blood on a curtain liner at the Newbury house, and found blood on a window screen at the Walden house.
 {¶ 6} On November 10, 2006, appellant went to the Cleveland Heights police station to pick up his car. The police arrested him, fingerprinted him, and swabbed his mouth for a DNA sample to compare with the fingerprints and blood found at both crime scenes and in his car.
 {¶ 7} On December 26, 2006, appellant was indicted for one count of aggravated burglary in violation of R.C. 2911.11, one count of burglary in violation of R.C. 2911.12, and two counts of assault in violation of R.C. 2903.13. On May 23, *Page 5 
2007, a jury found appellant guilty of one count of aggravated burglary, one count of burglary and one count of assault, and the court sentenced him to seven years in prison.
ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred when it denied the motion to suppress evidence taken from the vehicle."
 {¶ 8} Specifically, appellant argues that there was no basis for the police to remove appellant's wallet from the car when it was parked on Newbury. Appellant further argues that the information on his driver's license identified him and led to locating the vehicle. Thus, the vehicle's seizure, subsequent search, and recovery of DNA evidence must be considered fruit of the poisonous tree.
 {¶ 9} "Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. An appellate court is to accept the trial court's factual findings unless they are clearly erroneous. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review." State v. Polk, Cuyahoga App. No. 84361,2005-Ohio-774, at ¶ 2 (internal citations omitted).
 {¶ 10} While warrantless searches are presumptively unconstitutional, "[t]he well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband *Page 6 
or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." State v. Mills (1992),62 Ohio St.3d 357, 367 (citing Chambers v. Maroney (1970), 399 U.S. 42, 51;Carroll v. United States (1925), 267 U.S. 132). The Mills court additionally held that "discovery of a vehicle suspected to have been used recently in a robbery creates an immediate need to act, before the automobile can be removed. If the police had probable cause for the search, the search was constitutional." Id.
 {¶ 11} In the instant case, the state argued at the suppression hearing that the wallet was in plain view in an unlocked car, and the police took it to secure it for safekeeping. In the alternative, the state argues the automobile exception: that probable cause existed to search the car because of its potential association to the burglary, i.e., an unfamiliar car with out-of-state license plates found at the scene of the crime.
 {¶ 12} At the suppression hearing, Cleveland Heights police detective David Bartlee (Detective Bartlee), who was a followup investigator on both burglaries, testified that officers Downing and McHugh originally spotted the Cadillac at the Newbury scene.[1] According to Detective Bartlee, the officers ran the Cadillac's license plate and learned that the car was registered to Charles Davis, who had a *Page 7 
criminal history of burglaries. The officers then looked inside the vehicle, saw and secured appellant's wallet, and found his address on his driver's license.
 {¶ 13} Given this testimony, the trial court found the following when denying appellant's motion to suppress:
 "You can find late at night, the scene of a crime, you have an out-of-state plate. You have one plate that is not related to the residence *** but somebody has a serious criminal record. So you can find either from the wallet inside or the outside of the car would be a license plate. They sat on it briefly, then they left, part and parcel of a crime. You are talking about a house burglary."
 {¶ 14} Appellant argues that the police learned his identity and address — which eventually led them to the vehicle — via his driver's license, which was illegally obtained. However, the testimony, both at the suppression hearing and at trial, established that the officers discovered appellant's identity via the Cadillac's license plate; the police then discovered that appellant had a criminal history; finally, the police went into the car to get appellant's wallet, which revealed a current East Cleveland address.
 {¶ 15} When analyzed chronologically, the testimony shows probable cause existed for police to suspect that the Cadillac may have been associated with the dual burglaries being investigated, which falls squarely into the automobile exception to warrantless searches. The court did not err in denying appellant's motion to suppress, and his first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO *Page 8 "Count one of the indictment is structurally flawed because it omits essential elements and thus fails to allege an offense."
ASSIGNMENT OF ERROR NUMBER THREE "Count four of the indictment is structurally flawed because it omits essential elements and thus fails to allege an offense."
 {¶ 16} Specifically, appellant argues that the indictment against him for one count of aggravated burglary and one count of burglary failed to allege that he trespassed "knowingly," and that he acted "recklessly."
 {¶ 17} Burglary offenses are codified in R.C. 2911.11 and 2911.12, which state in pertinent part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure *** with purpose to commit *** any criminal offense ***." While the word "knowingly" is not found in these statutes, it is an element of criminal trespass pursuant to R.C. 2911.21, which, in turn, is an element of aggravated burglary and burglary. Appellant additionally argues that pursuant to R.C.2901.21, the culpable mental state of recklessness is presumed for aggravated burglary because the burglary statutes are silent as to mens rea. Appellant's argument regarding the default mens rea is misplaced. The level of intent required to commit a burglary offense is clearly expressed in the statute: "with purpose to commit *** any criminal offense ***." Therefore, the mens rea is purposefully, and the R.C.2901.21 reckless catchall provision does not apply. *Page 9 
 {¶ 18} In streamlining appellant's argument then, we agree that the indictment against him failed to allege that he trespassed knowingly.
 {¶ 19} Pursuant to Section 20, Article IV, Ohio Constitution and Crim.R. 7(A), a criminal defendant has the right to be adequately informed of the felonious charges against him in the form of an indictment.
 "An indictment meets constitutional requirements if it, `first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * * "Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."'"
State v. Foust, 105 Ohio St.3d 137, 144, 2004-Ohio-7006, quotingHamling v. United States (1974), 418 U.S. 87, 117-118; United States v.Hess (1888), 124 U.S. 483, 487.
 {¶ 20} However, in State v. Colon, 2008-Ohio-1624, slip opinion, the Ohio Supreme Court held that "[a]n indictment that omits the mens rea element of recklessness fails to charge the offense of robbery," and results in a defective *Page 10 
indictment. The Court further held that "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment."
 {¶ 21} The question now before us is, does the Colon holding, which addresses a robbery statute, apply to burglary and aggravated burglary? We conclude that it does not. The burglary statutes are not controlled by R.C. 2901.21 because they contain a mental state — namely purposefully. Furthermore, the mental state required by trespassing — namely, knowingly — is incorporated by reference into the burglary statutes. See, State v. Buehner, 110 Ohio St.3d 403, 406, 2006-Ohio-4707
(holding that "an indictment that tracks the language of the charged offense and identifies a predicate offense by reference to the statute number need not also include each element of the predicate offense in the indictment. The state's failure to list the elements of a predicate offense in the indictment in no way prevents the accused from receiving adequate notice of the charges against him").
 {¶ 22} In the instant case, the indictment for counts one and four mirrors the aggravated burglary and burglary statutes, which are not affected by the Colon ruling. As such, appellant's second and third assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FOUR "The trial court improperly amended count one of the indictment to include Warren Williams as the victim." *Page 11 
 {¶ 23} Crim.R. 7(D) states in part that the "court may at any time before, during, or after a trial amend the indictment *** in respect to any *** omission in form or substance, *** provided no change is made in the name or identity of the crime charged." In Dye v. Sacks (1962), 173 Ohio St. 422, the Ohio Supreme Court found it proper for the trial court to amend an indictment by changing the name of the victim, as the victim's identity is not an element of armed robbery. See, also,State v. Thompson, Cuyahoga App. No. 85843, 2006-Ohio-3162 (holding that adding a victim to an indictment was proper, as the defendant was aware of the evidence to be offered at trial); State v. Johnson, Cuyahoga App. Nos. 81692 and 82693 (holding that an indictment for burglary and kidnapping was proper when no victim was named).
 {¶ 24} In the instant case, count one charged appellant with burglary, and the named victim was Naomi Williams. In counts two and three, appellant was charged with assault, and the named victims were Naomi Williams and Warren Williams, respectively. Taking the above case law into consideration, we find that it was not error for the court to amend the indictment to include Warren Williams as a victim of count one, as the victim's identity is not an element of burglary, and appellant was aware that Warren Williams was a victim in the associated assault charge. Appellant's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FIVE *Page 12 "The trial court improperly allowed police officer opinion testimony that the two burglaries were related."
 {¶ 25} Specifically, appellant argues that this type of opinion testimony "usurps the jury's role as factfinder."
 {¶ 26} In support of his argument, appellant cites State v.Boston (1989), 46 Ohio St.3d 108, which stands for the proposition that a doctor's opinion about the truthfulness of a child abuse victim's testimony was improper because "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Id. at 129.
 {¶ 27} In the instant case, Cleveland Heights Police Detective Mark Schmitt (Detective Schmitt), who has 34 years of experience with the police department and was one of the followup detectives assigned to the two burglaries at hand, testified that the two crimes were related.
 {¶ 28} We do not see the parallel between the instant case andBoston, as Detective Schmitt was not admitted to testify as an expert witness. He was an eyewitness who investigated the crime scenes the day after the events took place. The testimony regarding the crime scenes' relation was elicited while the prosecution was establishing why a Cleveland Heights police officer was investigating an East Cleveland crime.
 "[PROSECUTOR]: Your Honor, if I may, counsel brought up the fact he was doing an investigation in *Page 13 East Cleveland. I'm simply trying to explain to the jury where he was doing it in East Cleveland. It's all part of the investigation.
 THE COURT: I am curious about that. So I'll allow it. Answer the question.
 A: There was a burglary on a street in Cleveland Heights that was very close to Walden, and this incident. It was agreed upon that I would collect evidence from both and submit it.
 Q: So based on your experience, you believe these two were inter-related?
 A: Absolutely."
 {¶ 29} Given the limited testimony that contained both fact and opinion and the context within which Detective Schmitt's statements were made, we find that the jury's role as fact finder was not compromised, and the court did not err by allowing the testimony. See State v.Richardson (Jan. 16, 1992), Cuyahoga App. No. 59804 (holding that a police officer's "testimony was properly admitted by the court as eyewitness testimony. Of course, the trier of fact was assisted by [the officer's] experience on the police ambulance"). Appellant's fifth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER SIX *Page 14 "The trial court erred in admitting the fingerprint evidence, including exhibits eight and nine."
 {¶ 30} Specifically, appellant argues that his fingerprint cards were not authenticated and "there was no evidence that a comparison was made between the latent prints taken from the [Newbury house] and a known print of Mr. Davis." Additionally, appellant argues that the fingerprint expert who testified violated hearsay rules and appellant's right to confrontation under the Sixth Amendment.
 {¶ 31} The standard of review for admissibility of evidence is abuse of discretion. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296. Furthermore, pursuant to Evid.R. 901(A), there is a requirement of authentication for evidence to be admissible, and this "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 32} A careful reading of the transcript in the instant case shows that when asked to identify state's exhibit 8, which is the latent print card, Officer Downing stated the following:
 "A: That is a fingerprint lift of the entry point of the southeast glass storm window.
 Q: Is there an address identifying what scene this occurred in?
 A: Yes, sir.
 Q: What scene was that?
 A: 2447 Newbury.
 Q: Does it state who lifted that print? *Page 15 
 A: Brian McHugh.
 Q: You actually watched Investigator McHugh lifting prints and filling out cards?
 A: Yes."
 {¶ 33} In addition, the state introduced into evidence appellant's known print cards, which consist of a fingerprint card from the Cleveland Heights Police Department, with appellant's full name, social security number, birth date, and signature, as well as matching finger-and palm-print cards from the Federal Bureau of Investigation. City of Cleveland Police Department fingerprint examiner Felicia Simington testified that the latent prints found at the Newbury house matched appellant's known prints: "I determined that the latent print — there were actually two fingers that were identified which is the ring finger, finger number 9, and the pinky finger which is finger number 10 of the left hand, and it was found to be one and the same of finger number 9 and finger number 10. Fingerprint card of Charles Davis."
 {¶ 34} We find that the latent prints from the Newbury house were properly authenticated by Officer Downing. As to appellant's booking card, Simington testified that exhibit nine was a copy of appellant's known fingerprint card, and then stated that a "fingerprint card is a card a subject gives up knowingly. Fingerprints are taken. Each finger is rolled onto a box and there [are] 10 boxes for 10 fingers."
 {¶ 35} The state argues that it authenticated appellant's known print card as business record under Evid.R. 803(6). When authenticating a business record, it is *Page 16 
not necessary for the specific individual who compiled the information to testify. "A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice" to keep such records. Senate Report No. 93-1277, Fed.R.Evid. 803(6), Title 28, U.S. Code, 274-75. We note that the Ohio rule mirrors the Federal Rules of Evidence on this matter. See, also, State v. Knox (1984), 18 Ohio App.3d 36;State v. Corley (Jan. 23, 1995), Madison App. No. CA94-04-015. Compare with State v. Allen (Apr. 7, 1983), Cuyahoga App. Nos. 43687 and 43688 (holding that improperly admitted fingerprint evidence amounted to harmless error when it was merely cumulative with other incriminating evidence).
 {¶ 36} We are unconvinced, however, that fingerprint cards qualify as business records under the Ohio Rules of Evidence. Additionally, we note that appellant did not object to the admission of the known or latent fingerprint cards as exhibits during trial, therefore, he waived all but plain error on appeal. See, City of Akron v. Stalnaker, Summit App. No. 23617, 2007-Ohio-6789 (holding that because the defendant did not object to a 911 tape's authenticity at trial, "absent plain error, he has waived this issue for appeal").
 "The Ohio Supreme Court has explained that there are three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial: (1) there must be an error, i.e., a deviation from a legal rule, (2) the error must be plain, meaning that an obvious defect in the trial proceedings occurred, and (3) the error must have affected substantial rights, meaning that the trial court's error must have affected the outcome of the trial." *Page 17 
State v. Simms, Hamilton App. Nos. 030138 and 030211, 2004-Ohio-652, citing State v. Noling, 98 Ohio St.3d 44, 56. In State v. Long (1978),53 Ohio St.2d 91, at paragraph three of the syllabus, the Ohio Supreme Court stated that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Harmless error, on the other hand, is an error which does not affect substantial rights and shall be disregarded. Crim.R. 52(A).
 {¶ 37} Accordingly, we find that if appellant's known fingerprint card was not properly authenticated, this amounts to harmless error under Crim.R. 52 in light of the incriminating DNA evidence discussed in appellant's seventh assignment of error, supra.
 {¶ 38} Finally, appellant argues that the "opinion of a non-testifying fingerprint examiner" was admitted in violation of the rule against hearsay. Appellant cites to the trial transcript to support this argument; however, no hearsay statements were made in association with appellant's fingerprints. Simington testified as an expert witness about fingerprinting as a science in general and that the fingerprint cards she was shown as exhibits were the same cards she compared for the case. Simington also confirmed the initial examiner's finding that the latent fingerprints found at the crime scene matched appellant's known prints. Simington testified as to her opinion, which does not bring into play the rule against hearsay in this case. Compare with State v.Crager, 116 Ohio St.3d 369, 2007-Ohio-6840 (holding that *Page 18 
"records of scientific tests are not `testimonial' underCrawford [and] a criminal defendant's constitutional right to confrontation is not violated when a qualified expert DNA analyst testifies at trial in place of the DNA analyst who actually conducted the testing").
 {¶ 39} In conclusion, the court did not err in allowing the exhibits and testimony regarding appellant's latent fingerprints, and any error regarding his known fingerprints was harmless. Appellant's sixth assignment of error is overruled. ASSIGNMENT OF ERROR NUMBER SEVEN
 "The evidence of DNA comparison was inadmissible."
 {¶ 40} Specifically, appellant's arguments are similar to those in the previous assignment of error — that there was insufficient evidence that the curtain liner on which appellant's DNA was found came from the Newbury house. Appellant also argues that this DNA was compared to a single known swab of appellant's DNA, when the police officer took two DNA swabs from appellant, and that "this type of inconsistency is such as to invalidate the results and require exclusion of the evidence."
 {¶ 41} According to the transcript, Detective Bartlee identified state's exhibit three as the curtain liner that was taken from the Newbury house after the burglary. In addition, Barbara Rose, who was watching the Newbury house while the owners were out of town, testified that exhibit three looked like or was similar to the curtain liner that was hanging in the house at the time, although she could not be sure, *Page 19 
because she did not have a vivid memory of the fabric hanging behind the curtains. Furthermore, there is a long line of testimony, from police officers to the DNA examiner, establishing the chain of custody the exhibit was subjected to, the protocol for authentication, and the procedure for making sure evidence is not tarnished.
 {¶ 42} When read together, we find that the court did not abuse its discretion in admitting the curtain liner and resulting DNA identification into evidence. Appellant's final argument under this assignment of error regarding an inconsistency between one and two DNA swabs is unsupported by case law, as appellant does not cite, nor could we find, authority on this topic. Appellant's seventh assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER EIGHT "The evidence was insufficient to sustain the conviction in count four."
 {¶ 43} Specifically, appellant argues that the Newbury house was not occupied or likely to be occupied, as the homeowners were out of town when the burglary took place. We disagree.
 {¶ 44} Ohio courts have held that a residential structure which is neither presently occupied nor permanently abandoned can be burglarized as an "occupied structure" under statutory law. In State v. Green
(1984), 18 Ohio App.3d 69, 72, the Tenth District Court of Appeals of Ohio held the following:
 "Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant *Page 20 for a prolonged period of time, can be regarded as a structure `maintained' as a dwelling within the meaning of division (A). In this context, then, division (A) includes a dwelling whose usual occupant is absent on prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property — to help `maintain' its character as a dwelling."
See, also, State v. Brisbin (Feb. 16, 1989), Cuyahoga App. No. 54921 (holding that "[a]s is often the case, a resident can return and surprise an unwary criminal who may have earlier thoroughly investigated the occupancy of the house"); R.C. 2912.12 and 2909.01(C). In the instant case, the record contains ample testimony that the Newbury house owners were on vacation in Florida, and their niece, Barbara Rose, had a key to the house so she could check on it from time to time — quite the same situation as contemplated in Green. Appellant's eighth assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER NINE "The prosecutor improperly argued an incorrect version of the law to the jury."
 {¶ 45} Specifically, appellant argues that he was denied his right to due process when the prosecutor incorrectly argued that "a person who is on vacation is still deemed to be residing at the home for purposes of Count Four." We disagree *Page 21 
given our disposition of appellant's eighth assignment of error, and his ninth assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TEN "The trial court committed plain error when it failed to instruct the jury that Mr. Davis had to recklessly cause physical harm in order to be convicted as charged in count one."
 {¶ 46} Appellant notes that because he did not object to the instruction at trial, appellate review of this issue is limited to plain error.
 {¶ 47} In State v. Long (1978), 53 Ohio St.2d 91, 96-97, the Ohio Supreme Court held that an erroneous jury instruction "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." See, also, State v. Wamsley,117 Ohio St.3d 388, 2008-Ohio-1195.
 {¶ 48} Given our finding that "recklessness" is not an element of burglary in appellant's second and third assignments of error, as well as the DNA evidence weighing against appellant, we overrule his tenth assignment of error. ASSIGNMENT OF ERROR NUMBER ELEVEN
 "Mr. Davis received the ineffective assistance of counsel."
 {¶ 49} Specifically, appellant argues that defense counsel was ineffective for the same reasons raised in his previous ten assignments of error. *Page 22 
 {¶ 50} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In State v.Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v.Bradley (1989), 42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 51} Because our analysis did not reveal a flawed or deficient performance by defense counsel in relation to appellant's myriad arguments, appellant fails the first prong of the Strickland test, and his final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MELODY J. STEWART, J., CONCUR
[1] Officer Downing did not testify at the suppression hearing but he did testify at the trial; Officer McHugh did not testify at either time as he was on sick leave. *Page 1