OPINION
{¶ 1} Steven Day appeals from his conviction in the Clark County Common Pleas Court of aggravated burglary. The facts underlying Day's conviction are as follows.
 {¶ 2} On May 18, 2007, at approximately 5:00 a.m., 80-year-old Talmadge Davison Sr. was preparing breakfast in his kitchen at 420 West Euclid Avenue in *Page 2 
Springfield. He heard a loud noise at his front door and saw a man come through the door with his hand extended. The man demanded Davison's money and shoved him in his chest, causing Davison to fall backwards landing on his back. The man stood straddling Davison and again demanded his money. Davison pointed to his front pocket, where he kept his wallet. The man snatched the wallet, ripping Mr. Davison's pocket and coveralls in the process. The man then fled the house; the entire incident lasted approximately 60 seconds.
 {¶ 3} Davison called the police and Officer Paul Herald arrived and found Davison sitting up, bracing himself against his couch. As Officer Herald entered the home, he noted that the front door had been kicked open and there were parts of the door strewn inside the front of the house. Davison provided a description of the burglar but stated he did not know his name. Officer Herald reported that Davison stated, "I know him, I know him" and "I know him, but I just don't know his name." (Trial Tr. At 105, 111.) He told Herald the suspect was a young black male in his thirties, five foot, eight inches tall and approximately one hundred fifty pounds in weight.
 {¶ 4} Davison later remembered that approximately a month before this incident, he met the burglar in front of his home. On that earlier day, the man approached Mr. Davison's wife who had just returned from grocery shopping. Mr. Davison went to the door and noticed the man assisting his wife up the steps; the man stated, "I live right down the street. I'm your friend. I'll help you all. All you need to do is just ask me. I live on the same side." (Id. at 121.) Davison said Day kept repeating himself and he kept observing his front door. (T. 122.) Davison later heard from several persons in his neighborhood that these people believed that a person by the name of Steven Day was *Page 3 
the man who burglarized his home. (Id. at 129-130.) Davison believed that these statements were just speculation and hearsay. Following the investigation, Mr. Davison saw Day walk up and down the street in front of his home. (Id. at 131.)
 {¶ 5} A few weeks after the burglary, Detective Darwin Hicks came to Davison's home with a photo lineup. (Id. at 125.) Davison was handed a sheet of paper with six photos and numbers on it. Hicks asked Davison to identify the intruder and write down the number of the photo he identified and sign the sheet. (Id. at 125-126.) He identified photo number three as the intruder. (Id. at 127.) Davison was then informed that photo number three was a photo of Day.
 {¶ 6} At trial, Davison identified the defendant but noted that during the burglary Day had braids and now he had a wig or "disguise." Davison later noted that Day was probably not wearing a wig and that it was Day's own long unbraided hair. (Id. at 139-140, 155.)
 {¶ 7} Day did not testify in his own defense. His mother, Shirley Day, testified she lives just down the street from the Davison home and her son, Steven, lives with her. She testified she was sleeping at the time of the burglary and she heard no unusual activity in her home that morning.
 {¶ 8} In his first assignment of error, Day argues the trial court abused its discretion in permitting the State to amend Day's indictment at the conclusion of the evidence and before final argument. Day was indicted as follows: "Steven Day did by force, stealth, or deception, trespass in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in *Page 4 
the separately secured occupied portion of the structure any criminal offense when the offender inflicts, or attempts or threatens to inflictphysical harm on another to wit: defendant kicked in door, entering residence pointing unknown weapon at victim and demanding money, taking victim's wallet before fleeing residence in violation of Section2911.11(A)(2) of the Ohio Revised Code." (Emphasis added.)
 {¶ 9} When the State realized that the indictment had an error in the numerical designation, it sought to amend the indictment. The indictment should have read and was amended to read, "Section 2911.11(A)(1) of the Ohio Revised Code." Crim. R. 7(B) provides in part that error in the numerical designation shall not be ground for dismissal of the indictment or reversal of a conviction, if the error or omission did not prejudicially mislead the defendant. Although Day objected to the State's request for the amendment, he offered no argument that he was prejudiced by the State's amendment of the indictment. The State never contended during the trial that Day had a deadly weapon or dangerous ordnance on his person or within his control as required by R.C. 2911.11(A)(2). The appellant's first assignment is Overruled.
 {¶ 10} In his second assignment, Day contends he was denied the effective assistance of counsel because trial counsel failed to move to suppress Davison's identification of him in the photo lineup. Day argues that Officer Hicks suggested to Davison that the suspect was in the photo lineup. Davison testified that Hicks told him "I'm preparing a lineup and I'm going to bring it out to you and I need you to identify from this lineup who this [sic] was robbed you." (T. 125.) Day also argues the identification procedure was suggestive because before the identification took place, neighbors of Davison told him his neighbor Steven Day had burglarized Davison's home. Also, Day *Page 5 
argues the photo lineup was suggestive because his photo used by the police was six years old.
 {¶ 11} The State argues that there was nothing suggestive about the photo lineup, and Davison recognized his intruder from having seen him previously in the neighborhood. The State notes that Davison had heard from neighbors that a man by the name of Steven Day had burglarized his house, but it treated this as mere speculation. (T. 135.) The State also argues it was not established that the photo of Day was actually a six-year-old photo. Lastly, the State argues that Davison identified Day not because the lineup was suggestive, but because Davison got a good look at Day and knew him from the neighborhood although not by name.
 {¶ 12} We agree with the State that Day did not demonstrate that the photo lineup was unconstitutionally suggestive. Davison would naturally believe that the suspect might be in the photo array or why would the officer show it to him? The police did not inform Davison that the neighbors thought Steven Day was the burglar. In any event, Davison insisted his neighbors were merely engaged in speculation. In short, Day has failed to demonstrate that had counsel filed the pre-trial motion to suppress the pre-trial identification of him by Davison, the trial court would have granted such motion. Day has failed to demonstrate that his trial counsel committed a substantial violation of his essential duties to him or that his representation fell below an objective standard of reasonableness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. The second assignment of error is Overruled.
 {¶ 13} In his third assignment, Day contends his conviction is against the manifest *Page 6 
weight of the evidence. Day argues the trial record is filled with inconsistencies and contradictions. Notably, Day argues that he does not match the physical description of the burglar provided by Davison. He notes he is 46 years old and six feet tall. Davison described the burglar as 5'8" tall and in his thirties. He notes that the photo lineup was suggestive and tainted by neighbors' suggestions to Davison that his neighbor, Day, was the burglar. He notes that Davison told the police officer he did not know his attacker. Day notes there was no physical evidence to corroborate Davison's identification of him. Day notes that, although Davison testified he got a clear look at the burglar, he could not say what the burglar's eye color was. Finally, Day argues the jury may have been influenced by the testimony concerning neighborhood hearsay that Day was the burglar.
 {¶ 14} The State argues that its evidence was not inconsistent or contradicting. The State notes that Davison testified he had seen the burglar before but did not know his name. The State notes that Davison refused to be influenced by the speculation of his neighbors. In focusing on the credibility of Davison, the trial court made the following remark at Day's sentencing: "In reviewing the facts of this case, this Court has no doubt that the State of Ohio proved all the elements of aggravated burglary beyond a reasonable doubt as was found by the jury. I don't believe that anybody could put words in Mr. Davison's mouth. That has to be one of the most honest witnesses I've ever seen in court. He wasn't going to say anything that people asked of him. And when he was saying something that he thought really wasn't good evidence, didn't say anything. People asked him how he got this information. He made sure the jury didn't believe anything that wasn't legitimate as far as hearsay goes, and nobody should be convicted on that. He has to be one of the most credible witnesses I've ever seen come across." *Page 7 
 {¶ 15} Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. When inquiring into the manifest weight of the evidence, the reviewing court sits as the thirteenth juror and makes an independent review of the record. Id. at 387. In taking on this role the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The discretionary power to grant a new trial on this basis should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717. The facts of this case set out above clearly demonstrate that the trier of fact did not lose its way and there is no miscarriage of justice.
 {¶ 16} We agree with the State that the evidence presented does not demonstrate that the jury lost its way in convicting Day. Davison testified he got a good look at the burglar. He testified as follows:
 {¶ 17} "A. I'm sorry, if I look the wrong direction, I'm 80 years old and I want to cooperate. I have a photo image of this man. I seen him twice; and as I lay there on my back, him standing over me straddling me, I'm looking straight up in his face. I got a good photo image of what he looked like. No mistake. No guessing. I'm sure."
 {¶ 18} Although Davison got a good look at Day's face, he may not have been able to properly gauge his height while lying on his kitchen floor. This may explain the *Page 8 
description he provided Officer Herald. There was no evidence Day did not weigh approximately one-hundred and fifty pounds. The jury was in the best position to evaluate Davison's testimony which convicted Day. The third assignment of error is Overruled.
 {¶ 19} In his fourth assignment, Day contends his conviction is based on insufficient evidence. Day argues that no rational juror could have convicted him based on the State's evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law.Thompkins; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks; State v. Goff (1998), 82 Ohio St.3d 123, 694 N.E.2d 916. The evidence presented by the State was not legally insufficient to support Day's conviction. The fourth assignment of error is Overruled.
 {¶ 20} In an amended brief, Day argues in his fifth assignment that his indictment was defective because it failed to charge a mens rea element for the crime of robbery creating structural error. The State notes, however, that Day was not charged with robbery but with aggravated burglary under R.C. 2911.11(A)(1).
 {¶ 21} In State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 (ColonI), the Ohio Supreme Court ruled that "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at syllabus. The Court noted that Colon had been indicted on a robbery charge under R.C. 2911.02(A)(2). The Court further noted *Page 9 
that the indictment omitted the mens rea element of the robbery statute. Id. at ¶ 10. As the robbery statute does not include a mental state for subsection (2), the catchall mental state of recklessness would apply pursuant to R.C. 2901.21(B). Id. at ¶ 11-13. The Ohio Supreme Court further clarified its decision in State v. Colon, 119 Ohio St.3d 204,2008-Ohio-3749 ("Colon II). The Court stated, "we emphasize that the syllabus in Colon I is confined to the facts in that case." Id. at ¶ 8.
 {¶ 22} Appellant was not indicted on a robbery charge, as inColon. Appellant was indicted for aggravated burglary. Pursuant to the Ohio Supreme Court's clarification in Colon II, Appellant's indictment would not be affected by the Colon decisions because Appellant was indicted with a statute not addressed by Colon.
 {¶ 23} The Eighth District Court of Appeals has addressed, postColon I, whether recklessly must be included in the indictment when one is charged with aggravated burglary or burglary. See State v. Davis
(June 5, 2008), Cuyahoga App. No. 90050, 2008-Ohio-3453. The Court noted that the burglary statute includes two mental states. First, knowingly is incorporated by reference in the predicate offense of trespass. Id. at ¶ 21. Second, the mental state of purposefully is written in the statute. Id. Therefore, the court concluded that the Colon holding does not apply to burglary and aggravated burglary. Id. See, also, our recent opinion in State v. Smith (Dec. 5, 2008), Mont. App. Nos. 21463 and 22334, 2008-Ohio-6330. The fifth assignment of error is Overruled. The judgment of the trial court is Affirmed.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Amy Smith
Dawn S. Garrett
 Hon. Richard J. O'Neill *Page 1