OPINION
{¶ 1} Defendant, Alfred Lewis, appeals from his conviction and sentence for felonious assault, carrying a concealed weapon, and illegal possession of a firearm in a liquor permit premises.
 {¶ 2} On December 8, 2004, Donald Scarberry, Patrick Holbrook and Aaron Hitt were working as security guards at *Page 2 
Sloopy's, a local bar located in Dayton's Oregon District at 613 E. Fifth Street, Dayton. At around 11:30-11:45 p.m., following a disturbance, Scarberry, Holbrook and Hitt approached Defendant and told him to leave the bar. At that time Defendant was wearing a black, blue and yellow striped polo shirt and dark pants. Scarberry was the primary person dealing with Defendant, but all three security guards attempted to escort Defendant out of the bar. During that time Holbrook was able to look directly at Defendant. Scarberry spent several minutes inside the bar with Defendant, during which time he observed Defendant's face when Defendant did not immediately leave after being asked to do so.
 {¶ 3} When Defendant finally reached the back door of the bar and started to exit, he suddenly turned around and pulled a gun from his waistband, pointed the gun at Scarberry, and pulled the trigger. Scarberry heard a clicking sound as the gun misfired. Defendant and Scarberry were only a few feet apart at the time and Scarberry got a good look at Defendant. Scarberry observed that the gun was a semi-automatic nine millimeter. Holbrook and Hitt were standing only a couple of feet away from Defendant and Scarberry, and they both witnessed this incident. They, too, had an unobstructed view of Defendant, who was facing them. *Page 3 
 {¶ 4} After Defendant attempted to shoot Scarberry in the back doorway of the bar, Holbrook turned and ran the other way through the bar, exiting the front door. Holbrook heard one gunshot as he was running through the bar. After exiting the front door, Holbrook observed a police cruiser stopped at the traffic light at Fifth Street and Wayne Avenue. Holbrook flagged the officer down and told him what had just happened. Holbrook described the suspect as an African-American male, six foot to six foot four, wearing a blue, black and yellow striped shirt and dark pants. Holbrook told the officer that the suspect ran westbound on Fifth Street and the officer drove off in that direction.
 {¶ 5} After his failed attempt to shoot Scarberry, Defendant fled through the back door and ran westbound on Fifth Street in the direction of the Goodwill store. Scarberry and Hitt chased Defendant. During the pursuit, Defendant turned and fired one shot at Scarberry. Both Scarberry and Hitt saw the muzzle flash and heard the gunshot. Defendant ran around the corner behind the Goodwill store. A patron who was leaving the bar, Erick Cochran, witnessed this entire incident, including Defendant's attempt to shoot Scarberry at the back door of the bar, the pursuit of Defendant by Scarberry and Hitt, and the shot Defendant fired *Page 4 
at Scarberry during the chase. Cochran testified that the area was well-lighted and that he got a good look at the suspect.
 {¶ 6} Within seconds Scarberry, Hitt and Cochran observed a Dayton police cruiser heading westbound on Fifth Street. All three men made contact with the officer, telling him Defendant had a gun and describing Defendant. The officer exited his cruiser and along with Hitt, Scarberry and Cochran began looking for Defendant behind the Goodwill store, where there is a small cement wall and a loading dock. Hitt found Defendant hiding behind the wall, and they came face to face. Defendant was still wearing the same shirt he had on inside the bar.
 {¶ 7} When Officer Michael Lally approached, Defendant ran toward Wayne Avenue. The officer chased Defendant. Hitt and Cochran watched as other officers converged on Wayne Avenue and apprehended Defendant. Hitt immediately went over and told police "you got him." Hitt also told police that Defendant fired a shot during the chase on Fifth Street. Cochran likewise approached police and identified Defendant as the shooter. Within less than five minutes after these crimes occurred, Defendant was apprehended, placed in the rear of a police cruiser, and returned to Sloopy's bar where Scarberry *Page 5 
and Holbrook separately identified him as the perpetrator.
 {¶ 8} Police found a nine millimeter handgun next to the cement wall behind the Goodwill store where Defendant had been seen. That gun, which holds ten rounds of ammunition, was loaded with nine live rounds, which is consistent with one shot having been fired. Police also recovered a spent shell casing on Fifth Street near the area where Defendant fired a shot at Scarberry during the chase. Laboratory analysis revealed that the nine millimeter handgun police found fired that shell casing to the exclusion of all other firearms.
 {¶ 9} Defendant was indicted on two counts of felonious assault, R.C.2903.11(A)(2), each with a firearm specification pursuant to R.C.2941.145, one count of carrying a concealed weapon, R.C. 2923.12(A), one count of illegal possession of a firearm in a liquor permit premises, R.C. 2923.121(A), and one count of tampering with evidence, R.C.2921.12(A)(1). Defendant filed a motion to suppress the physical evidence and his statements. The trial court overruled that motion following a hearing. Defendant was found guilty following a jury trial of one count of felonious assault with the attached firearm specification, carrying a concealed weapon, and illegal possession of a firearm in a liquor permit premises. The jury found Defendant not guilty of tampering with *Page 6 
evidence, and it failed to reach a verdict on the second felonious assault charge. The trial court sentenced Defendant to an aggregate prison term of eight years.
 {¶ 10} Defendant timely appealed to this court from his conviction and sentence.
 {¶ 11} Defendant presents two issues for our review: (1) that the trial court erred in overruling his motion to suppress evidence because the one man show-up identification procedure utilized by police was unduly suggestive and rendered the resulting identifications unreliable, and (2) that Defendant's convictions were against the weight and sufficiency of the evidence because of the unduly suggestive and unreliable pretrial identifications. We shall address these issues in the order that best facilitates our opinion and disposition of this case.
 SECOND ASSIGNMENT OF ERROR {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 13} Defendant argues that the pretrial identification procedure utilized by police, a one man show-up, was so impermissibly suggestive that it rendered the resulting identifications unreliable and therefore inadmissible. We disagree. *Page 7 
 {¶ 14} The State argues that because Defendant did not specifically challenge the pretrial identification procedures in his motion to suppress the evidence, he has waived that issue for purposes of appellate review. State v. Peagler, 76 Ohio St.3d 496, 1996-Ohio-73. During the hearing on Defendant's motion to suppress, there were multiple references to the pretrial identification of Defendant made by the various witnesses to this incident. Furthermore, the trial court in its decision overruling Defendant's motion to suppress the evidence, did in fact consider and rule on the propriety of the pretrial identifications, finding no improper suggestiveness that would render them unreliable. Accordingly, in the interests of justice, we will consider this issue.
 {¶ 15} When a witness identifies a defendant prior to trial, due process requires a court to suppress evidence of the witness's prior identification upon the defendant's motion if the confrontation was unduly suggestive of the defendant's guilt to an extent that the identification was unreliable as a matter of law under the totality of the circumstances. State v. Murphy, 91 Ohio St. 3d 516, 534,2001-Ohio-112.
 {¶ 16} The defendant has the initial burden to show that the identification procedure was somehow suggestive. If *Page 8 
the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is sufficiently reliable to be admitted in evidence despite its suggestive character. State v. Wills (1997), 120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining issues as to its reliability go to the weight of the evidence, not its admissibility, and no further inquiry by the court into the reliability of the identification is required Id., at 325; State v.Beddow (March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 17} A one man show-up identification procedure, unlike a well-conducted lineup, is inherently suggestive. State v. Sherls
(February 22, 2002), Montgomery App. No. 18599, 2002-Ohio-939. Nevertheless, such identifications are not unduly suggestive if they are shown to have been reliable. State v. Moody (1978), 55 Ohio St.2d 64;Sherls, supra. We have repeatedly held that one man show-ups which occur shortly after the crime are not per se improper, State v. Click (May 9, 1989), Montgomery App. No. 11074, and that prompt on-the-scene show-ups tend to insure the accuracy of identification, involve a minimum intrusion, and support the prompt release of persons not identified.State v. Gilreath (June 19, 1992), *Page 9 
Greene App. No. 91CA35. Accord: State v. Madison (1980),64 Ohio St.2d 322, 332. Factors to be considered in evaluating their reliability include the prior opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Moody, supra; Sherls,supra.
 {¶ 18} Defendant argues that the witnesses' identification of him was unreliable because each had said, when they were asked to describe the shooter's appearance, that their attention was directed primarily to the gun he used and, to a lesser extent, the clothing he wore. In other words, they provided no particulars concerning his facial features from which, at least in part, those witnesses later identified Defendant as the culprit in the shooting. However, the critical issue is the opportunity they had to observe the culprit, coupled with the certainty they expressed in their subsequent identifications.
 {¶ 19} All three security guards, Scarberry, Holbrook and Hitt, were in close proximity to Defendant during the events that transpired inside Sloopy's bar, especially at the *Page 10 
rear door, and all three had a sufficient opportunity to view Defendant's face and get a good look at Defendant. Erick Cochran, the patron who was leaving the bar when these events transpired, testified that he got a real good look at Defendant. The fact that Defendant was wearing a distinctive black, blue and yellow striped rugby-style shirt that stood out and helped the witnesses identify Defendant when police apprehended him only five minutes after these crimes occurred supports and does not detract from the reliability of those identifications. Rather, the fact that the perpetrator had on the same clothing when apprehended by police that he wore during commission of these offenses, if anything, reinforces the accuracy of the identifications of Defendant as the perpetrator. That is particularly true in this case because the perpetrator was apprehended within a very few minutes after the crimes occurred and some of the witnesses never lost sight of him except for very brief periods of a few seconds at a time.
 {¶ 20} Even though one-man show-up identifications are inherently suggestive, that suggestiveness does not unduly prejudice a defendant who is identified as a result as the culprit unless the suggestive nature of the procedure overcomes doubts that the witness has or might have. When the *Page 11 
witness had an ample opportunity to observe the culprit only a short time before, expresses no doubts, and identifies the accused accordingly, the suggestive nature of the procedure diminishes to a point that admissibility of the identification evidence is no longer in issue. The issue then becomes its factual reliability, which is for the trier of fact to determine in relation to issues of guilt or innocence.
 {¶ 21} Examining the totality of the facts and circumstances, we conclude that the pretrial identifications of Defendant as the perpetrator were sufficiently reliable to be admissible despite the inherent suggestiveness in this type of identification procedure. Defendant's second assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR {¶ 22} "APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY OR THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), *Page 12 61 Ohio St.3d 259:
 {¶ 24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 25} Defendant's current claim that his convictions are not supported by legally sufficient evidence is based solely upon his assertion in his second assignment of error that the evidence identifying him as the perpetrator of these offenses is unreliable and therefore inadmissible. We previously determined that claim lacks merit.
 {¶ 26} The evidence presented in this case, including the identification of Defendant as the perpetrator of these crimes by no less than four eyewitnesses, when viewed in a light most favorable to the State, is clearly sufficient to permit a rational trier of facts to find that all of the essential elements of the offenses have been proven beyond a reasonable doubt. Defendant's convictions are supported by *Page 13 
legally sufficient evidence.
 {¶ 27} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 28} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 29} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 30} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to *Page 14 
find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."Id., at p. 4.
 {¶ 31} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 32} In arguing that his convictions are against the manifest weight of the evidence, Defendant repeats his claim that the evidence identifying him as the perpetrator is unreliable. In disposing of Defendant's second assignment of error, we noted that the reliability of that evidence was an issue for the trier of fact to decide.
 {¶ 33} Importantly, the four identifications of Defendant as the perpetrator, while substantial evidence of his guilt, is not the only evidence linking Defendant to these crimes. Near the small cement wall behind the Goodwill store where Defendant was observed hiding, police found a Smith and Wesson nine millimeter handgun. That gun, which holds ten *Page 15 
rounds, was loaded with nine live rounds, which is consistent with evidence that Defendant fired one shot. Scarberry and Holbrook identified that gun as the one Defendant pointed at Scarberry and then pulled the trigger when they were at the rear door of Sloopy's bar, and then subsequently fired at Scarberry while Scarberry and Hitt were chasing Defendant. In the area where Defendant shot at Scarberry, police recovered one spent shell casing. Laboratory analysis revealed that the shell casing was fired from that gun police recovered to the exclusion of any other gun. Furthermore, when police apprehended Defendant but a few minutes after the shooting, he was wearing an empty gun holster.
 {¶ 34} The evidence presented in this case does not portray a manifest miscarriage of justice in which Defendant is the unfortunate victim of a quadruple misidentification and mere coincidence because he just happened to be in the Oregon District at the time of the shooting and was wearing the same clothes as the perpetrator. Rather, the evidence presented weighs heavily in favor of the guilty verdicts. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to resolve. DeHass, supra.
 {¶ 35} The jury did not lose its way simply because it *Page 16 
chose to believe the State's witnesses. Reviewing this record as a whole, we cannot clearly find that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 36} Defendant's first assignment of error is overruled. The judgment of the trial court will be affirmed.
 FAIN, J. And DONOVAN, J., concur. *Page 1