AKRON BAR ASSOCIATION *v*. CARTER.

[Cite as *Akron Bar Assn. v. Carter,* 115
Ohio St.3d 18, 2007-Ohio-4262.]

(No. 2007–0757—Submitted June 6, 2007—Decided August 29, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Cornell Phillip Carter of Fairlawn, Ohio, Attorney Registration No. 0062986, was admitted to the Ohio bar in 1994. For the reasons that follow, we conclude that respondent's license to practice law in Ohio should be suspended for two years, with the final year of the suspension stayed.

{¶ 2} On June 9, 2006, relator, Akron Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in March 2007. The panel then prepared written findings of fact, conclusions of law, and a recommended sanction, all of which the board adopted.

Misconduct

{¶ 3} Respondent was employed from May 2003 until June 2005 by State and Federal Communications, Inc. During part of this employment, respondent was entitled to use one of the company's American Express charge cards. This privilege was taken away by the company's president in August 2004 because respondent had charged excessive personal expenses to the card, including stays at a Comfort Inn in Akron. Respondent was then permitted to use the card for official business only after requesting the card from the company's controller and on the condition that he return it immediately after use.

{¶ 4} On December 31, 2004, respondent checked into the Comfort Inn using the company's American Express card number to guarantee payment for the room charges without the approval of his employer.

{¶ 5} Respondent continued to stay at the Comfort Inn for several months without paying for the room, and in March 2005, the owner of the hotel charged the American Express card for respondent's unpaid balance. Respondent was upset and told the hotel's owner that he intended to pay his hotel bill in cash within one week. After that discussion, the hotel owner canceled the charge on the American Express card.

{¶ 6} When respondent failed to pay the room charges within one week, the hotel's owner again charged the unpaid balance of $5,900.23 to the American Express card that belonged to respondent's employer. After that second charge was made by Comfort Inn, respondent repeatedly promised his employer that he would promptly deliver a check to the employer for the full amount that had been charged to the company's charge card. Respondent failed, however, to present the promised check.

{¶ 7} Respondent gave a letter to his employer in late April 2005, resigning from the company effective June 1, 2005. When he left the company, respondent still had not paid his employer for his personal hotel bill that had been charged to the American Express card.

{¶ 8} In August 2005, a detective from the Copley police department contacted respondent about the unpaid debt. Respondent gave the detective a check the next month purporting to cover the amount owed for the hotel charges, but the account on which the check was drawn did not contain sufficient funds. Finally, respondent did repay the amount that he owed State and Federal Communications, Inc., for his personal hotel bill. He pleaded guilty to felony charges of theft and misuse of a credit card. Respondent entered a diversion program that could lead to the dismissal of the criminal charges if he successfully completes the program.

{¶ 9} We agree with the board that respondent's actions violated the following Disciplinary Rules: DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law).

## Sanction

{¶ 10} Relator recommended that respondent be indefinitely suspended from the practice of law. The panel and the board instead recommended that respondent be suspended from the practice of law for two years, with the second year stayed on conditions. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 11} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in Section 10 of the Rules and Regula-

tions Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The aggravating factors in this case include respondent's dishonest or selfish motive, his pattern of misconduct, his multiple offenses, and his refusal to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (g).

{¶ 12} Mitigating factors identified by the board include the absence of any prior disciplinary record, respondent's eventual payment of restitution to his former employer, his cooperative attitude toward the disciplinary proceedings, and the imposition of criminal penalties on respondent for his misconduct. BCGD Proc.Reg. 10(B)(2)(a) and (f).

{¶ 13} After weighing the aggravating and mitigating factors in this case, we agree with the board that respondent should be suspended from the practice of law for two years, with the final year of that suspension stayed on conditions. As respondent himself acknowledged at the disciplinary hearing, he exercised "bad judgment," made "bad financial decisions," and broke several promises that he had made to his former employer and to the owner of the Comfort Inn. He nonetheless characterized his actions as "not criminal, * * * not deceitful, * * * [and] not dishonest." Respondent also testified at the disciplinary hearing that his conduct was not "unethical, * * * illegal, * * * [or] immoral," and he told the panel that he had pleaded guilty to the criminal charges despite his belief that he was not guilty.

{¶ 14} Like the panel and the board, we are troubled by respondent's failure to accept full responsibility for his unprofessional, and ultimately criminal, actions. Even if he honestly intended to pay his debt promptly, he took advantage of the hotel owner's patience. He gave misleading statements to his former employer about his willingness and ability to pay his financial obligations. His actions during 2005 and his attitude at the 2007 disciplinary hearing do not reflect the kind of sound judgment, integrity, and candor that we expect from Ohio lawyers.

{¶ 15} "An attorney who has been convicted of felony theft offenses has violated the basic professional duty to act with honesty and integrity." *Cincinnati Bar Assn. v. Blankemeyer*, 109 Ohio St.3d 156, 2006-Ohio-2038, 846 N.E.2d 523, ¶ 12. "One of the fundamental tenets of the professional responsibility of a lawyer is that [the lawyer] should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. [The lawyer] should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670.

{¶ 16} A violation of Disciplinary Rules barring conduct involving fraud, deceit, dishonesty, or misrepresentation ordinarily calls for the actual suspension of an attorney's license. See *Disciplinary Counsel v. Beeler*, 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44; *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, ¶ 15.

{¶ 17} The board's recommended sanction is similar to those that we have imposed in other cases. See, e.g., *Cuyahoga Cty. Bar Assn. v. Garfield*, 109 Ohio St.3d 103, 2006-Ohio-1935, 846 N.E.2d 45, ¶ 10 (imposing an 18–month suspension on an attorney with no history of disciplinary problems who had entered a plea of guilty to the crime of bank fraud); *Akron Bar Assn. v. Meyer* (1999), 87 Ohio St.3d 324, 325, 720 N.E.2d 900 (attorney's convictions for grand theft and trafficking in food stamps constituted illegal conduct involving moral turpitude as well as dishonest or fraudulent conduct that adversely reflected on the attorney's fitness to practice law, warranting a two-year suspension, with the second year stayed); *Warren Cty. Bar Assn. v. West* (1995), 73 Ohio St.3d 565, 567–568, 653 N.E.2d 376 (a two-year suspension, with the second year stayed, was the appropriate sanction after an attorney pleaded guilty to the felony offense of carrying a concealed weapon).

{¶ 18} Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years, with the final year stayed on conditions. During the first year of his suspension, respondent shall successfully complete the diversion program that he entered in January 2006. If he fails to do so, or if he commits any further misconduct during the two-year suspension period, the stay will be lifted, and respondent will be suspended for the full two-year period of suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., O'CONNOR and CUPP, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 19} I respectfully dissent from the majority decision in regard to the sanction imposed on respondent. In reviewing respondent's actions, I see a troubling pattern of dishonesty. He abused the trust of his employer and a hotel owner on multiple occasions to further his own selfish needs. He delayed opportunities to repay the injured parties for several months, to the point that the police were called to resolve the matter. Even at that late stage, he further prolonged the proceedings by giving a police detective a check that was not supported by sufficient funds. Despite the fact that he pleaded guilty to two

fourth-degree felony charges, theft and misuse of a credit card, he has refused to acknowledge that his conduct was wrongful.

{¶ 20} These serious ethical violations warrant a stricter sanction than the partially stayed suspension ordered by the majority. I would therefore impose a two-year suspension from the practice of law, with no time stayed.

O'CONNOR and CUPP, JJ., concur in the foregoing opinion.

———————

James M. Campbell and Joseph C. McLeland, for relator.

Cornell P. Carter, pro se.