DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court judgment of conviction and sentence. A jury found James M. Conley, defendant below and appellant herein, guilty of aggravated burglary in violation of R.C. 2911.11(A)(1).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR *Page 2 
WHEN IT ALLOWED STATE WITNESS TOMMY R. COOPER TO IDENTIFY MR. CONLEY AT TRIAL AS THE PERPETRATOR OF THE CRIME IN VIOLATION OF MR. CONLEY'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED STATE WITNESS SANDRA COOPER TO IDENTIFY MR. CONLEY AT TRIAL AS THE PERPETRATOR OF THE CRIME, WHEN SHE WAS UNABLE TO IDENTIFY MR. CONLEY AFTER THE ALLEGED INCIDENT, WHEN SHE NEVER SAW THE PERPETRATOR'S FACE, AND WHEN SHE FORMED HER BELIEF THAT MR. CONLEY WAS THE PERPETRATOR ONLY AFTER SEEING MR. CONLEY AT THE PRELIMINARY HEARING IN VIOLATION OF MR. CONLEY'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED MR. CONLEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION, WHEN THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF MR. CONLEY'S RIGHTS UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROSECUTOR, OVER OBJECTION, TO QUESTION MR. CONLEY REGARDING ALLEGED CRIMINAL CONDUCT OF WHICH MR. CONLEY HAD NOT BEEN CONVICTED, IN CONTRAVENTION OF EVID.R. 609 AND EVID.R. 404(B), AND IN VIOLATION OF *Page 3 
MR. CONLEY'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSITUTION."
 FIFTH ASSIGNMENT OF ERROR:
 "THE PROSECUTOR'S MISCONDUCT DENIED MR. CONLEY A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF MR. CONLEY'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I
OF THE OHIO CONSTITUTION."
 SIXTH ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. CONLEY'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 SEVENTH ASSIGNMENT OF ERROR:
 "UNDER THE SUPREME COURT OF OHIO'S AUTHORITY ANNOUNCED IN STATE V. COLON, 118 OHIO ST.3D 26, 2008-OHIO-1624, AND STATE V. COLON SLIP OPINION NO. 2008-3749, STRUCTURAL ERROR PERMEATED MR. CONLEY'S TRIAL, IN VIOLATION OF MR. CONLEY'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 3} On the morning of December 19, 2007, Tom and Sandra Cooper were awaken by their barking dog. Sandra investigated and noticed that the door to their home was open. She called for her husband. Both Sandra and Tom then observed a closed bathroom door that was usually kept open. Tom investigated and found an intruder. Tom attempted to trap the intruder while Sandra called 911, but the intruder *Page 4 
fought his way out. The couple wrestled with the intruder, and Sandra struck him on the head and shoulders with a flashlight, but the intruder eventually ran out the door.
 {¶ 4} Sheriff's deputies were dispatched to investigate, and several suspicious individuals were observed running around the streets of Beaver early that morning. Authorities did not, however, apprehend the suspect. The following day, Tom Cooper identified appellant from a photo lineup as the man that he attempted to subdue. Sandra Cooper did not identify anyone from the lineup but, later, at a preliminary hearing, identified appellant as the perpetrator.
 {¶ 5} The Pike County Grand Jury returned an indictment charging appellant with aggravated burglary. Appellant pled not guilty and matter came on for a jury trial. The only evidence that linked appellant to the break-in was the Coopers' identification of him as the man in their home. No physical evidence linked appellant to the crime scene. Appellant testified in his own defense that he spent the night before the break-in with his cousin and that he awoke early the next morning to go to his grandfather's house. He denied any involvement with the break-in.
 {¶ 6} After hearing the testimony, the jury found appellant guilty. Subsequently, the trial court sentenced appellant to serve seven years in prison. This appeal followed.
 I {¶ 7} We jointly consider appellant's first and second assignments of error because they raise similar issues. Appellant contends that the Coopers should not have been permitted to identify him at trial as the man they found in their home.
 {¶ 8} Our analysis begins with a precise framing of the question before us. *Page 5 
Appellant does not argue that the photographic lineup shown to the Coopers was suggestive. Instead, he argues that the "eyewitnesses to the crime were substantially impeached, and the reliability and certainty of their identification was virtually nil."
 {¶ 9} Generally, as long as pretrial identification procedures are not unduly suggestive, issues concerning the reliability of that identification goes to the weight of the evidence, not its admissibility. State v. Wills (1997), 120 Ohio App.3d 320, 324,697 N.E.2d 1072; State v. McCroskey, Stark App. No. 2007CA89,2008-Ohio-2534, at ¶ 29. The same principles apply to identification at trial.
 {¶ 10} In the case sub judice, Tom Cooper's testimony, both during direct examination and cross-examination, revealed that he had only minutes to identify the intruder, and that he could not do so until after he observed a photographic lineup. Tom Cooper also admitted that he knew appellant and had hired him to perform odd jobs. The implication is that, if the perpetrator was someone that the victim actually knew, the victim should have been able to quickly identify the perpetrator and should not have needed a photographic lineup. Also, Sandra Cooper could not identify appellant from the photo lineup. She identified appellant only after she observed his "profile" at the preliminary hearing. Nevertheless, the jury heard, and obviously accepted, their testimony.
 {¶ 11} A jury, sitting as the trier of fact, is in the best position to view all of the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations to weigh witness credibility. Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Trial courts emphasize to jurors the important and necessary role *Page 6 
they occupy, and appellate courts should be very circumspect about second guessing triers of fact on issues of evidentiary weight and witness credibility. See State v. Vance, Athens App. No. 03CA27,2004-Ohio-5370, at ¶ 10; State v. Bowers, Hocking App. No. 06CA7,2007-Ohio-3986, at ¶ 40.
 {¶ 12} In the case sub judice, the jury, as the trier of fact, heard and fully considered the particular facts and circumstances that surrounded appellant's identification. The jury obviously found the Coopers' identification testimony persuasive. Apparently, the jurors also rejected appellant's alibi testimony. Those types of decisions are entrusted to trier of fact and we find nothing in the record before us to permit us to simply second guess the jury's decision.
 {¶ 13} Accordingly, based upon the foregoing reasons we hereby overrule appellant's first and second assignments of error.
 II {¶ 14} In his third assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. Again, we disagree.
 {¶ 15} When appellate courts review claims that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v.Earle (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440; State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 16} Because the gist of the assignment of error challenges the credibility of *Page 7 
the prosecution witnesses, we again point out that the evidence weight and witness credibility are issues the trier of fact must decide.State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721. A trier of fact is free to believe all, part or none of the testimony of any witness who appears before it. State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80; State v. Caldwell (1992), 79 Ohio App.3d 667, 679,607 N.E.2d 1096.
 {¶ 17} In the case sub judice, appellant argues that the case against him "was weak" and was "developed under the erroneous identifications . . . by Mr. And Mrs. Cooper." As we noted above, however, whatever arguable flaws there may have been with appellant's identification as the perpetrator, those alleged flaws were considered and determined by the trier of fact. Obviously, the jury found the Coopers credible. Once again, appellant has not persuaded us that the jury lost its way in this matter and that he is the victim of a manifest miscarriage of justice.
 {¶ 18} Accordingly, we hereby overrule appellant's third assignment of error.
 III {¶ 19} Appellant's fourth assignment of error involves a question that the trial court allowed during cross-examination. Appellant was asked on direct if he had "ever been convicted of a felony." He responded in the negative. The same question was asked again on cross. When appellant again answered in the negative, the prosecution then asked if appellant "pass[ed] a stolen credit card in Waverly" the previous December. Defense counsel objected, but after argument, the trial court allowed the question. Appellant answered the question and the prosecution then changed its line of *Page 8 
questioning.[2]
 {¶ 20} Evid. R. 404(A) is a general bar to the use of character evidence to prove that an accused acted in conformance with that character evidence. Exceptions exist to this general prohibition, however. One enumerated exception is evidence of the character of a witness on the issue of credibility as provided in Evid. R. 607, 608 and 609. Evid. R. 608(B) allows for "[s]pecific instances of conduct to be inquired of on cross-examination so long as they are "probative of truthfulness or untruthfulness." Thus, under that rule, any witness, including a criminal defendant, may be impeached on cross-examination concerning specific instances of conduct that did not result in a criminal conviction, but reveals conduct that is clearly probative of untruthfulness. Strict limitations apply to this type of evidence, however. Only acts that involved dishonesty or deceit are appropriate subjects of cross-examination and the admissibility of such evidence is entrusted to the trial court's discretion. Werdner v. Blazic (1994),98 Ohio App.3d 321, 648 N.E.2d 565.
 {¶ 21} The exercise of a trial court's discretion is governed generally by Evid. R. 403 (probative value of evidence outweighs danger of unfair prejudice, confusion of the issues, or misleading the jury) and under the Evid. R. 608(B) "clearly probative of truthfulness or untruthfulness" requirements. Additionally, the inquiry concerning *Page 9 
specific acts of untruthful behavior is limited to questions posed on cross-examination and not through the use of extrinsic evidence. Consequently, if a witness denies the allegations of a prior untruthful act, the cross-examiner is "stuck" with the witness's response.State v. Reed (1996), 110 Ohio App.3d 749, 675 N.E.2d 77; State v.Levin (1984), 11 Ohio St.3d 172, 464 N.E.2d 552 (trials could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct on a purely collateral matter). Finally, the party asking questions must have a good faith basis in fact for the inquiry. State v. Gillard (1998),40 Ohio St.3d 226, 533 N.E.2d 272, cert.den. 492 U.S. 925, 109 S.Ct. 3263,106 L.Ed.(2d) 1989, abrogated on other grounds by State v. McGuire80 Ohio St.3d 390, 1997-Ohio-335, 689 N.E.2d 1112.
 {¶ 22} Aggravated burglary has been deemed a crime of dishonesty.State v. Ewing, Franklin App. No. 06AP-243, 2006-Ohio-5523, at ¶ 24. The misuse of a credit card also involves dishonesty. Akron Bar Assn. v.Carter, 115 Ohio St.3d 18, 873 N.E.2d 824, 2007-Ohio-4262, at ¶¶ 4-9. In the case sub judice, appellant chose to testify and deny that he had entered the Cooper residence. Appellant further denied that he had any other felony convictions. Appellant's credibility was in issue and the prosecution asked a question concerning a specific act of untruthful behavior in order to probe appellant's honesty and truthfulness. Apparently, the prosecution had a good faith basis for the question, the incident was not remote in time and no extrinsic evidence was adduced to contradict appellant's response to the question. Further, the prosecution did not badger appellant or ask repetitive questions concerning the alleged misuse of the credit card. *Page 10 
 {¶ 23} In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732,654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181. Here, based upon the
 {¶ 24} circumstances present in the case sub judice, we conclude that the trial court did not err by permitting the prosecution to ask appellant about the stolen credit card. The questions posed during cross-examination satisfied all of the requirements under Evid. R. 608(B).
 {¶ 25} Accordingly, based upon the foregoing reasons, we find no merit in the fourth assignment of error and it is hereby overruled.
 IV {¶ 26} Appellant asserts in his fifth assignment of error that he was the victim of prosecutorial misconduct and denied a fair trial. In particular, appellant claims that the prosecutor (1) vouched for the Coopers' credibility and (2) suggested that appellant is a liar.
 {¶ 27} At the outset, we note that defense counsel did not object to either alleged instances of misconduct. Thus, appellant waived all but plain error. State v. Anderson, Portage App. No. 2008-P-2,2008-Ohio-6413, at ¶ 47; State v. Dennis, Franklin App. No. 08AP-369,2008-Ohio-6125, at ¶ 14. Prosecutorial misconduct rises to the level of plain error only when it is clear that the defendant would not have been convicted in the absence of the improper comments. State v.Olvera-Guillen, Butler App. No. CA2007-05-118, 2008-Ohio-5416, at ¶ 36;State v. Rodgers, Trumbull App. No. 2007-T-3, 2008-Ohio-2757, *Page 11 
at ¶ 44. Here, we are not persuaded that the trial's outcome would have been different if the comments had not been made.
 {¶ 28} Additionally, appellant has not persuaded us that the comments actually constitute prosecutorial misconduct. His first claim concerns the comments that the Coopers were telling "the truth" and had "no reason to lie." These comments, however, simply argue the evidence. The comments do not vouch for witness veracity. To vouch for a witness, a prosecutor must have implied knowledge of facts outside the record or placed the prosecutor's own personal credibility in issue. State v.Jackson, 107 Ohio St.3d 53, 836 N.E.2d 1173, 2005-Ohio-5981, at ¶ 117. We find no indication of that sort in the prosecutor's comments.
 {¶ 29} Appellant also cites a portion of closing argument in which the prosecutor asked the jury whether they believed that appellant "told the complete and honest truth" and further suggested that his testimony may have been "rehearsed." Although we find the latter comment disturbing, it does not rise to the level necessary to establish that appellant has been deprived of a fair trial.
 {¶ 30} We believe that these comments fell within the bounds of acceptable closing argument and to simply question whether a criminal defendant has been truthful. Appellant cites State v. Clemons (1998),82 Ohio St.3d 438, 452, 696 N.E.2d 1009, for the proposition that the use of the term "liar" is improper. In the case sub judice, however, that word was not used. Appellant concedes that point, but argues that the implication that he is a "liar" is the objective of the prosecution's argument. In Clemons, however, the Supreme Court objected to the use of certain "terms," including "liar," not the implication of the State's argument. Id. The prosecution is certainly free to *Page 12 
point out discrepancies in the evidence and flaws in a defendant's version of evidence and evidence, but should refrain from using harsh terms or labels that may tend to limit or discourage the actual focus on the evidence. Appellant's argument, carried to its logical conclusion, would severely restrict the prosecution's ability to counter an accused's testimony if the accused denies involvement in a crime. Almost every comment a prosecutor might make with respect to such denial calls into question, at least implicitly, the accused's veracity. To hold that the prosecution can never pursue that particular line of argument would prevent a full examination and comment on the relevant evidence and work an unfair advantage for the defense.
 {¶ 31} Accordingly, based upon the foregoing reasons, we find no merit in appellant's fifth assignment of error and it is hereby overruled.
 V {¶ 32} Appellant asserts in his sixth assignment of error that he received constitutionally ineffective assistance from his trial counsel. Criminal defendants have a right to counsel, including the right to effective assistance from counsel. See McCann v. Richardson (1970),397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763; State v. Stout, Gallia App. No. 07CA5, 2008-Ohio-1366. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. SeeStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674; also see State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904.
 {¶ 33} To establish deficient performance, a defendant must prove that counsel's performance fell below an objective level of reasonable representation. To establish *Page 13 
prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815,848 N.E.2d 810, at ¶ 95. Failure to establish either element is fatal to the claim. State v. Jones, Scioto App. No. 06CA3116, 2008-Ohio-968, at ¶ 14. Therefore, if one element is dispositive, a court need not analyze both prongs. See State v. Madrigal (2000), 87 Ohio St.3d 378, 389,721 N.E.2d 52.
 {¶ 34} Appellant's first alleged incident of ineffective assistance of counsel involves his trial counsel's "fail[ure] to request discovery." Appellant argues that he could have addressed the aforementioned deficiencies in Sandra Cooper's identification and "moved to suppress the identification" or prepared an effective cross-examination. We disagree.
 {¶ 35} As we previously noted, questions concerning the reliability of identification generally go to evidence weight, not admissibility.Wills, 120 Ohio App.3d at 324; McCroskey, supra, 2008-Ohio-2534, at ¶ 29; Lewis, 2007-Ohio-2601, at ¶ 16. Additionally, issues surrounding identification testimony are generally very limited. We believe that in the instant case trial counsel did, in fact, conduct an extensive and effective cross-examination of both Coopers concerning the circumstances under which they identified appellant. Defense counsel highlighted the facts that tended to indicate that Sandra's identification was suspect because it occurred after the preliminary hearing. Counsel also noted that Tom (1) did not have his glasses when he wrestled with the intruder, and (2) was familiar with appellant because he had hired him to perform odd jobs. The implication of this questioning is that if appellant was the perpetrator, Tom Cooper should have recognized him right away rather than after *Page 14 
viewing a photo lineup.
 {¶ 36} Appellant's next allegation of ineffective assistance is that trial counsel failed to object to Tom Cooper's testimony identifying appellant as the intruder because it "was inherently unreliable." We reject this claim for the same reasons stated above. Even assuming, arguendo, that trial counsel had objected, reliability issues goes to weight rather than to admissibility.
 {¶ 37} Accordingly, based upon the foregoing reasons, we find no merit in the sixth assignment of error and it is hereby overruled.[3]
 VI {¶ 38} In his seventh assignment of error, appellant asserts that his indictment failed to set forth the mens rea for the offense of aggravated burglary. Although there was no objection to this deficiency, appellant argues that the absence of mens rea in the indictment is a "structural error" that mandates reversal under State v. Colon,118 Ohio St.3d 26, 885 N.E.2d 917, 2008-Ohio-1624 (Colon I). We disagree.
 {¶ 39} Here, Colon I does not apply because the aggravated burglary statute does contain a mens rea and that mental state was set out in the indictment. The R.C. 2911.11(A)(1) crime of aggravated burglary provides:
 "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any *Page 15 
criminal offense, if any of the following apply:(1) The offender inflicts, or attempts or threatens to inflict physical harm on another." (Emphasis added.)
 {¶ 40} The culpable mental state for this offense is "purposeful." seeState v. Davis, Cuyahoga App. No. 90050, 2008-Ohio-3453, at ¶¶ 21-22;State v. Blackburn, Trumbull App. No. 2001-T-52, 2003-Ohio-605, at ¶¶ 15-18; State v. Ringler (Aug. 30, 1999), Morrow App. No. CA882. The indictment in the case sub judice charged appellant, inter alia, with "trespassing in an occupied structure" with "purpose to commit therein a criminal offense." (Emphasis added.) Thus, the indictment did include the culpable mental state for this offense.
 {¶ 41} Our view is further buttressed by similar conclusions in other appellate districts that Colon I does not apply to aggravated burglary charges. See Davis, supra at ¶¶ 21-22; State v. Smith, Montgomery App. Nos. 21463 22334, 2008-Ohio-6330, at ¶¶ 74 76.
 {¶ 42} For these reasons, we find no merit in appellant's the seventh assignment of error and it is hereby overruled.[4] *Page 16 
 {¶ 43} Having considered all the errors assigned and argued in the brief, and finding merit in none, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[2] The trial transcript provides as follows:
 JUDGMENT ENTRY
It is ordered the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Dissents
McFarland, J.: Concurs in Judgment Opinion
 "Q. In late December of 2007, did you pass a stolen credit card in Waverly?
 A. Did I pass one?
 Q. Pass one? Use one?
 A. Well, uh, yeah, I guess I did. I didn't know that it was stolen. A friend of mine . . . Yes, sir."
[3] Appellant's brief originally included a third instance of alleged ineffective assistance. However, on November 21, 2008 appellant filed a motion to amend his brief and withdraw that issue. His motion is hereby granted and we do not address that issue in our decision.
[4] The Colon I case involved a charge of robbery, in violation of R.C. 2911.02(A)(2). Because the statute set forth no culpable mental state for robbery, the Ohio Supreme Court relied on R.C. 2901.21(B) to find the proper mens rea was recklessness. Id. at ¶ 12. The court ruled that the failure to set forth the requisite mental state in the indictment was a "structural error" which was not waived at trial level when defense counsel failed to object. Id at the syllabus. Subsequently, on a motion for reconsideration, the Ohio Supreme Court noted the facts in Colon I were "unique" and the principles set out in that opinion would only apply "in rare cases." See State v. Colon,119 Ohio St.3d 204, 893 N.E.2d 169, 2008-Ohio-3749, at ¶ 6 (Colon II). In light ofColon II, our colleagues in the Sixth District have refused to expandColon I beyond the robbery charge to aggravated burglary. See State v.Walker, Lucas App. No. L-07-1156, 2008-Ohio-4614, at ¶¶ 70-72. The Tenth District also determined Colon I does not extend to burglary (which is a lesser included offense of aggravated burglary). State v. Moore, Franklin App. No. 07AP-914, 2008-Ohio-4546, at ¶¶ 53-54. *Page 1