[Cite as *State v. Boyd*, 2019-Ohio-1902.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-68 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-776 |
| | : | |
| TYREZ BOYD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of May, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Tyrez Boyd appeals from his convictions for aggravated robbery, kidnapping, aggravated drug trafficking, and aggravated drug possession. Finding no error, we affirm.

## I. Facts and Procedural History

{¶ 2} Boyd was charged in 2017 with one count of aggravated robbery and six counts of kidnapping, all felonies of the first degree.[1] He was charged in 2018 with an additional count of kidnapping and one count of aggravated trafficking in drugs, both first-degree felonies, and eight counts of aggravated possession of drugs, all second-degree felonies.[2] Each of the counts in both cases included a 3-year firearm specification. The two cases were consolidated and tried to a jury.

{¶ 3} The evidence presented at trial established that around 6 p.m. on December 5, 2017, two men—one wearing a red and black sweatshirt or jacket, sweatpants, and a red hat—entered Harding Road Pharmacy in Springfield, Ohio. The man in red brandished a handgun, and the men zip-tied the hands of seven employees. They then started throwing bottles of controlled substances into a plastic garbage bag. Unbeknownst to the men, one of the employees had her cell phone hidden on her, and several employees worked together to retrieve the phone and call 911.

{¶ 4} Officer Roger Jenkins from the Springfield Police Department was the first officer on the scene. He saw a man wearing red run with a trash bag through the store and out the back door, and Officer Jenkins gave chase. The man was able to scale a fence and get away, but not before dropping the trash bag full of stolen drugs. Officer Jenkins returned to the scene with the bag.

---

[1] Clark C.P. No. 17-CR-0776.

[2] Clark C.P. No. 18-CR-0084.

{¶ 5} A short time later, an officer saw Boyd standing in front of a Wendy's and wearing clothes like those worn by the perpetrator of the robbery. Boyd fled but was soon caught. He was brought back to the pharmacy, where Officer Jenkins identified him as "absolutely" the person he had chased. (Trial Tr. 379). A show-up identification was arranged by police, and all the employee-victims who participated identified Boyd as the man who had kidnapped them and robbed the store.

{¶ 6} The pharmacy's security cameras captured the robbery. All the victims and Officer Jenkins identified Boyd as the man in red shown in video and stills presented by the state. Evidence was also presented that Boyd's fingerprints were found on the plastic bag containing stolen drugs that Officer Jenkins recovered. Boyd's accomplice escaped and was never caught.

{¶ 7} Boyd took the stand in his own defense and testified that he did not commit the robbery, but he admitted that he was in Springfield on the day in question, that he was wearing the clothes all the victims and the officers identified and shown in the video, and that he had fled from police.

{¶ 8} The jury found Boyd guilty on all counts and specifications. At sentencing, the trial court merged the drug possession and trafficking charges, and the state chose to sentence for aggravated trafficking. The court sentenced Boyd to 11 years in prison for aggravated robbery, 11 years for aggravated trafficking, and 11 years for each kidnapping. The court ordered Boyd to serve the kidnapping sentences and the related firearm specifications concurrently to each other, but ordered the aggravated-robbery, aggravated-trafficking, and kidnapping sentences to be served consecutively. The court also imposed three consecutive firearm-specification sentences. The aggregate

sentence was 42 years in prison.

**{¶ 9}** Boyd appealed.

## II. Analysis

**{¶ 10}** Boyd presents four assignments of error for our review.

### A. Ineffective assistance of counsel

**{¶ 11}** The first assignment of error alleges:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO FILE A MOTION TO SUPPRESS WHICH CHALLENGED THE SHOW UP ID, IN VIOLATION OF BOYD'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

Boyd contends that his trial counsel should have moved to suppress the one-man show-up identification that police conducted at the pharmacy. He argues that the identification was impermissibly suggestive, giving rise to a substantial likelihood of misidentification.

**{¶ 12}** "To reverse a judgment based on ineffective assistance, the record must support a finding that defense counsel's performance was deficient, and that a reasonable probability exists that, but for counsel's omissions, the outcome would have been different." *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 27 (2d Dist.), citing *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 27, citing *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 13} "When a witness identifies a defendant prior to trial, due process requires a court to suppress evidence of the witness's prior identification upon the defendant's motion if the confrontation was unduly suggestive of the defendant's guilt to an extent that the identification was unreliable as a matter of law under the totality of the circumstances." *State v. Lewis*, 2d Dist. Montgomery No. 21592, 2007-Ohio-2601, ¶ 15, citing *State v. Murphy*, 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001). "[O]ne man show-ups are inherently suggestive." *State v. Broadnax*, 2d Dist. Montgomery No. 21844, 2007-Ohio-6584, ¶ 18. But "such identifications are not unduly suggestive and are admissible if they are reliable." *Id.*, citing *State v. Moody*, 55 Ohio St.2d 64, 67, 377 N.E.2d 1008 (1978).

{¶ 14} " '[R]eliability is the linchpin in determining the admissibility of identification testimony.' " *Moody* at 67, quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). "[O]ne man show-ups which occur shortly after the crime are not per se improper." (Citation omitted.) *Lewis* at ¶ 17. Indeed, "prompt on-the-scene show-ups tend to insure the accuracy of identification, involve a minimum intrusion, and support the prompt release of persons not identified." (Citations omitted.) *Id.* "Factors to be considered in evaluating their reliability include the prior opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Citations omitted.) *Id.*

{¶ 15} Here, immediately after being apprehended by police, Boyd was taken back to the pharmacy. When he arrived back at the scene, a show-up identification was then arranged. Officers had Boyd stand in front of a vehicle with its lights trained on him so

that the victims could see him, but he could not see them. One by one, four of the victims stood behind an officer and whispered whether Boyd was the person who robbed the pharmacy, and then each victim was set apart from the others. These victims testified that the officers did not pressure them to identify Boyd as the perpetrator but encouraged them to answer honestly. Ultimately, all the victims who participated in the show-up identification said that Boyd was the one who had robbed the store.

{¶ 16} The record supports the conclusion that, had Boyd challenged the identifications in a motion to suppress, the trial court would have found the identifications reliable. Each victim had seen the perpetrator's face during the robbery, which had occurred only a short time earlier. No evidence suggested that the victims' identification should not be believed. We see little basis on which counsel could have plausibly argued that the identification should be suppressed, so we cannot conclude that counsel's decision not to challenge admission of the identification constituted deficient performance.

{¶ 17} Even if counsel should have tried to suppress the show-up identification, we doubt that counsel's failure to do so affected the outcome of the trial. Even if the court had not admitted the evidence, there was ample other evidence that Boyd was the perpetrator. All seven victims testified at trial that the man seen in the security videos and stills was the man who robbed the store. Officer Jenkins testified that Boyd was "absolutely" the man that he chased and the man in the security video. (Trial Tr. 379). In addition, Boyd's fingerprints were found on the trash bag that contained drugs stolen from the pharmacy. Furthermore, the shoes and clothing that Boyd was wearing when he was booked into jail matched those seen in the security video and stills. Lastly, Boyd admitted that he was in Springfield on the day in question, admitted that he was wearing the clothes

identified by all the victims and the officers and shown in the video, and admitted that he fled from police. This was more than enough evidence to find Boyd guilty.

**{¶ 18}** Boyd has not shown either that defense counsel's performance was deficient or that he was prejudiced. Therefore, his claim of ineffective assistance of counsel cannot prevail.

**{¶ 19}** The first assignment of error is overruled.

### B. Sufficiency and manifest weight of the evidence

**{¶ 20}** The second and third assignments of error respectively allege:

THE TRIAL COURT ERRED IN ACCEPTING THE JURY VERDICT OF GUILTY AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF BOYD'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

Boyd argues that the evidence was insufficient to prove that he was the one who committed the crimes and that his convictions were against the manifest weight of the

evidence.

{¶ 21} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. After reviewing the evidence in the light most favorable to the prosecution, the reviewing court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "[I]n a review of the sufficiency of the evidence, the court does not engage in a determination of the witnesses' credibility." *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).

{¶ 22} In contrast, when an appellate court considers a manifest-weight-of-the-evidence challenge, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 23} The evidence presented at trial left little doubt that Boyd was one of the perpetrators. The victims and the police officer who responded all identified Boyd as the person who robbed the pharmacy and tied up the victims. Officer Jenkins, who initially saw him running through the pharmacy with the bag of drugs and then chased him on foot, identified Boyd at the scene and in court. The clothes that Boyd was wearing when

he was booked into jail matched the clothes that the perpetrator was wearing in the security video and video stills. Also, all seven victims identified him as the person who robbed the store and tied them up. Finally, Boyd's fingerprints were found on the bag of recovered drugs. That the jury believed all this evidence over Boyd's testimony that he was not the perpetrator is not surprising. In this case, the sufficiency and manifest weight of the evidence were not close questions.

{¶ 24} The second and third assignments of error are overruled.

### C. Consecutive sentences

{¶ 25} The fourth assignment of error alleges:

BOYD'S SENTENCE IS TOO LONG IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

Boyd contends that the trial court erred by ordering him to serve several of the sentences consecutively. He also contends that the court erred by imposing a third consecutive firearm-specification sentence.

{¶ 26} "R.C. 2953.08(G)(2) requires an appellate court to review the entire record to determine if the sentence is contrary to law, and to evaluate whether the record clearly and convincingly does not support the statutory findings required to impose consecutive sentences. If the 'reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.' " *State v. Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 13, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16

N.E.3d 659, ¶ 29. This is an "extremely deferential standard of review." *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 31.

**{¶ 27}** Boyd contends that ordering him to serve the sentences on the underlying felony counts consecutively was not supported by the record. He says that the trial court improperly found that the events constituted a course of conduct.

**{¶ 28}** "[B]ecause R.C. 2929.41(A) creates a presumption in favor of concurrent sentences for most felony sentences, our review of the record must determine whether the presumption was overcome by the trial court's findings set forth in R.C. 2929.14(C)(4)." (Citation omitted.) *Kay* at ¶ 15. R.C. 2929.14(C)(4) permits a court to require that an offender serve prison terms consecutively if the court finds that (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender," (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) one of the circumstances described in division (C)(4)(a), (b) or (c) is present.

**{¶ 29}** Here, the trial court made the required consecutive-sentence findings, including the circumstance in division (C)(4)(b) that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." We have said that "course of conduct" "may be established by factual links including time, location, weapon, cause of death or similar motivation." *Kay* at ¶ 19, citing *State v. Short*, 129 Ohio St. 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 144. We think that Boyd's crimes in this case were plainly

committed as part of one course of conduct—he kidnapped the victims precisely in order to steal drugs from the pharmacy. We note too that the trial court found that the victims of the offense "suffered serious psychological harm as a result of [these] offenses." (Sentencing Tr. 29). Consecutive sentences are not unsupported by the record in this case.

{¶ 30} Boyd also contends that the trial court abused its discretion by imposing a third consecutive firearm-specification sentence.

{¶ 31} Under R.C. 2929.14(B)(1)(b), a trial court ordinarily may not impose more than one prison term for firearm specifications for felonies that were committed as part of the same act or transaction. But R.C. 2929.14(B)(1)(g) creates an exception:

> If an offender is convicted of * * * two or more felonies, if one or more of those felonies are * * * aggravated robbery * * *, and if the offender is convicted of * * * a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty *and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.*

(Emphasis added.)

{¶ 32} Because Boyd was found guilty of two or more felonies, including aggravated robbery, and the felony counts contained firearm specifications, the trial court

was required to impose two consecutive sentences for two of the specifications of which Boyd was convicted. In addition to the mandatory, consecutive sentences, the trial court had discretion to impose consecutive sentences for the remaining firearm specifications, which the court exercised by imposing the third consecutive three-year sentence. *See State v. Welninski*, 2018-Ohio-778, 108 N.E.3d 185, ¶ 102 (6th Dist.).

{¶ 33} Boyd is not challenging the trial court's mandatory imposition of consecutive sentences for the first and second 3-year firearm specifications. Instead, he challenges the discretionary imposition of a consecutive sentence for the third 3-year firearm specification. He argues that the trial court abused its discretion by imposing this sentence because the court failed to consider the burden on state resources, which R.C. 2929.11 instructs a sentencing court to consider.[3] Boyd does not say why the third three-year prison term imposes an unnecessary burden on government resources.

{¶ 34} The trial court here did consider state resources. The court expressly stated in its judgment entry that it considered the purposes and principles of sentencing in R.C. 2929.11 and that it was "guided by the overriding purposes of felony sentencing, including * * * using the minimum sanctions that the court determines will accomplish those purposes without imposing an unnecessary burden on state or local government resources."

---

[3] R.C. 2929.11(A) states that a sentencing court must be guided by the purposes of felony sentencing, which are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *But see State v. Wilson*, 2d Dist., Montgomery No. 24978, 2012-Ohio-4756, ¶ 28 (Hall, J., concurring) (questioning whether resource burdens are exclusively the province of the executive and legislative branches of government.)

{¶ 35} Boyd fails to show that the trial court abused its discretion by ordering him to serve a third consecutive firearm-specification sentence.

{¶ 36} The fourth assignment of error is overruled.

### III. Conclusion

{¶ 37} We have overruled each of the assignments of error presented. The trial court's judgment is therefore affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

John M. Lintz
Steven H. Eckstein
Hon. Richard J. O'Neill