[Cite as *State v. Davis*, 2025-Ohio-1760.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-45 |
| | : | |
| v. | : | Trial Court Case No. 2022CR0458 |
| | : | |
| AARON J. DAVIS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 16, 2025

. . . . . . . . . . .

DAWN S. GARRETT, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Aaron J. Davis appeals from his convictions in the Greene County Common Pleas Court following his guilty plea. For the following reasons, the judgment of the trial court will be affirmed.

**I.    Procedural History and Facts**

{¶ 2} On September 30, 2022, Davis was indicted by a Greene County grand jury in Greene C.P. No. 2022CR0432 on one count of attempted aggravated murder, in violation of R.C. 2923.02(A) and R.C. 2903.01(A), a felony of the first degree (Count 1); one count of attempted murder, in violation of R.C. 2923.02(A) and R.C. 2903.02(B), a felony of the first degree (Count 2); one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree (Count 3); two counts of felonious assault, in violation of R.C. 2903.11(A)(2), felonies of the second degree (Counts 4 and 5); and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree (Count 6). The charge of tampering with evidence included a one-year firearm specification, and the other five counts included three-year firearm specifications. The indictment also included a forfeiture specification involving a handgun, magazine, and ammunition. The charges arose from an incident in which Davis and two other individuals drove a woman to a rural area of Greene County and shot her in the neck, intending to kill her and steal her vehicle. While attempting to get away, Davis also hit the victim on her head with the gun, but she was able to escape. Davis and his accomplices stole the victim's vehicle and disposed of the gun he used to shoot the victim.

{¶ 3} On October 20, 2022, Davis was indicted by a Greene County grand jury in Greene C.P. No. 2022CR0458 on one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree. Although based on the underlying facts of Case No. 2022CR0432, the new charge was added as a result of Davis's prior felony juvenile adjudication for aggravated robbery in the Montgomery County Common Pleas Court, Juvenile Division. The same forfeiture specification

included in Case No. 2022CR0432 was added to the indictment in Case No. 2022CR0458.

{¶ 4} At the State's request, the trial court consolidated the indictments and joined them for trial. The indictments were consolidated under Case No. 2022CR0458, with the six counts originally indicted in Case No. 2022CR0432 renumbered as counts one through six and the single count in Case No. 2022CR0458 renumbered as count seven.

{¶ 5} On April 26, 2024, Davis entered a negotiated guilty plea wherein he agreed to plead guilty to attempted aggravated murder (Count 1), aggravated robbery (Count 3), felonious assault (Count 5), tampering with evidence (Count 6), and having weapons while under disability (Count 7). Davis also agreed to plead guilty to the three-year firearm specifications attached to Counts 1 and 3, and the forfeiture specification. In exchange, the State agreed to dismiss the remaining counts and specifications and to recommend an aggregate sentence of 32 to 37½ years in prison. The parties further stipulated that the offenses were not allied offenses of similar import. The trial court accepted Davis's guilty pleas and ordered the preparation of a presentence investigation report ("PSI"). A sentencing hearing was scheduled for June 28, 2024.

{¶ 6} Before sentencing, Davis mailed the trial judge a May 15, 2024 letter requesting new counsel. On May 17, 2024, the trial court filed an entry refusing to consider the pro se letter because Davis was represented by counsel, and the letter was forwarded to counsel.

{¶ 7} At the sentencing hearing on June 28, 2024, the trial court inquired if Davis was still interested in obtaining new counsel and gave him an opportunity to explain why

he wanted new counsel. Following a brief discussion, the trial court denied his request for new counsel and proceeded to sentencing. Davis's counsel then argued for the firearm specifications to be served concurrently to each other, while the State argued that the sentences for the firearm specifications should be served consecutively. Additionally, the parties reiterated that none of the offenses merged. Ultimately, Davis was ordered to serve an indefinite prison term of 11 to 16½ years on Count 1; a definite prison term of 11 years on Count 3; a definite prison term of 2 years on Count 5; a definite prison term of 12 months on Count 6; and a definite prison term of 12 months on Count 7. The prison terms for all the counts were ordered to be served consecutively. Additionally, the trial court imposed a mandatory sentence of 3 years on each of the firearm specifications, to run consecutively to each other and prior to and consecutively to the other prison terms, for an aggregate sentence of 32 to 37½ years in prison. Davis was advised of the applicable post-release control notifications and violent offender registration requirements and ordered to pay court costs. No fines or restitution were imposed.

{¶ 8} Davis timely appealed and raises two assignments of error.

## II. Sentencing

{¶ 9} Davis's first assignment of error states as follows:

The trial court erred when it sentenced Appellant.

{¶ 10} According to Davis, the trial court erred in imposing consecutive sentences on two firearm specifications, which he contends was contrary to law. Davis further argues that his consecutive sentences on the underlying felony offenses were not

supported by the record. Accordingly, we will first consider whether the imposition of consecutive sentences on the two firearm specifications was contrary to law.

{¶ 11} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 21. Under that statute, an appellate court may increase, reduce, or otherwise modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either: (1) that the record does not support certain specified findings (including those in R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) that the sentence imposed is otherwise contrary to law. *Id*. at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 12} In addition to other felony offenses, Davis was convicted of attempted aggravated murder and aggravated robbery, each of which included a three-year firearm specification under R.C. 2941.145(A). Pursuant to R.C. 2929.14(B)(1)(a)(ii), if an offender who is convicted of or pleads guilty to a felony is also convicted of or pleads guilty to a specification in accordance with R.C. 2941.145(A), the court shall impose a mandatory prison term of three years on the offender for the specification. The mandatory prison term imposed for the specification shall be served consecutively to any other mandatory prison term imposed under R.C. 2929.14(B)(1)(a), consecutively to and prior to any prison term imposed for the underlying felony, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender. R.C. 2929.14(C)(1)(a).

{¶ 13} Pursuant to R.C. 2929.14(B)(1)(b), "[e]xcept as provided in division

(B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." Therefore, "[u]nder R.C. 2929.14(B)(1)(b), a trial court ordinarily may not impose more than one prison term for firearm specifications for felonies that were committed as part of the same act or transaction." *State v. Boyd*, 2019-Ohio-1902, ¶ 31 (2d Dist.). However, as explicitly noted in R.C. 2929.14(B)(1)(b), the general rule in that statute is subject to the exception set forth in R.C. 2929.14(B)(1)(g), which states in relevant part:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are . . . attempted aggravated murder . . . aggravated robbery, [or] felonious assault . . ., and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court *shall impose* on the offender the prison term specified under division (B)(1)(a) of this section *for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty* . . . .

(Emphasis added.)

{¶ 14} The Supreme Court of Ohio recently explained the application of R.C. 2929.14(B)(1)(a) and (g) as follows:

> [I]f an offender is convicted of a group of offenses and firearm specifications that were all part of the same transaction, the trial court must

impose one prison term for the firearm specifications and it must not impose prison terms for any other firearm specifications. But if any of the offenses is a serious felony such as murder or felonious assault, the trial court must impose prison terms for two of the firearm specifications and it may impose prison terms for any remaining firearm specifications.

*State v. Beatty*, 2024-Ohio-5684, ¶ 10.

{¶ 15} In the current appeal, Davis's convictions for attempted aggravated murder and aggravated robbery each fell under the category of offenses listed in R.C. 2929.14(B)(1)(g) and included three-year firearm specifications. "R.C. 2929.14(B)(1)(b) sets forth a general rule that is explicitly limited by R.C. 2929.14(B)(1)(g). And R.C. 2929.14(B)(1)(g) requires that courts impose prison terms for the two most serious firearm specifications 'of which the offender is convicted or to which the offender pleads guilty.' " *State v. Bollar*, 2022-Ohio-4370, ¶ 23. Because the foregoing exception identified in R.C. 2929.14(B)(1)(g) applied in this case, the trial court was required to order the sentences for the two three-year firearm specifications to be served consecutively to each other and consecutively and prior to the prison terms on the underlying felonies. Since the trial court correctly imposed consecutive sentences for the firearm specifications, the judgment of the trial court was not contrary to law.

{¶ 16} Although Davis acknowledges that the Ohio Supreme Court has determined that, under similar circumstances, the applicable statutes require a trial court to impose mandatory prison terms for two firearm specifications consecutively to each other and to the underlying felonies, Davis "disagrees" and contends that the two firearm specifications

should be imposed concurrently because the underlying felony convictions arose out of the same act or transaction. Appellant's Brief, p. 10. Although Davis "disagrees" with the Ohio Supreme Court, as an intermediate appellate court, we may not depart from the Supreme Court of Ohio's directives and statutory interpretations. Accordingly, we reject Davis's contentions.

{¶ 17} Davis further argues in his first assignment of error that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4) regarding the imposition of consecutive sentences for his underlying felony offenses. Davis points out that he was a first-time adult felony offender and was forced to engage in criminal actions because of threats from others, and he concludes that there was no factual basis in the record to support consecutive sentences. We do not agree.

{¶ 18} "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). A trial court may, however, impose consecutive sentences when the law specifically permits it to do so, such as the exception provided for in R.C. 2929.14(C)(4). *Id.*, citing R.C. 2929.41(A). Under R.C. 2929.14(C)(4), to impose consecutive sentences, the trial court must find that: (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one or more of the following three findings is made:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 19} To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, syllabus.  Under R.C. 2953.08(G)(2), "where a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings."  *State v. Withrow*, 2016-Ohio-2884, ¶ 38 (2d Dist.).  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable

doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 20} Davis does not argue that the trial court failed to make the consecutive sentence findings, only that the record does not support the imposition of consecutive sentences. The record reflects that the trial court made the appropriate consecutive sentence findings at the time of sentencing and included them in the judgment entry. Specifically, the trial court found that R.C. 2929.14(C)(4)(b) applied.

{¶ 21} Although the facts in the record are limited due to Davis's entering guilty pleas, the PSI reflects that Davis and two others lured a woman into a remote area of Greene County for the purpose of killing her and stealing her vehicle. Davis, the shooter, fired at the woman and shot her in the back of the neck. When the woman attempted to get away, Davis used the firearm as a bludgeon to hit her in the head. Miraculously, the woman was able to escape and survived the encounter, although she was hospitalized due to her injuries. Davis later admitted to police that it was his intention to kill the woman when he shot her and to steal her car and further that he and his co-defendants stole the car and disposed of the gun after the fact. It is also uncontroverted that Davis had a prior felony adjudication for aggravated robbery from the Montgomery County Common Pleas Court, Juvenile Division, and was not lawfully permitted to possess the firearm that he used during the offense.

{¶ 22} The record in this case does not clearly and convincingly fail to support the trial court's consecutive sentence findings. Davis's first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 23} Davis's second assignment of error states as follows:

Defendant was denied his constitutional right to due process and effective assistance of counsel.

{¶ 24} Davis argues that his trial counsel was ineffective for stipulating that his offenses were not allied offenses of similar import. He further argues that the trial court should have granted Davis's request to have new counsel appointed prior to sentencing and that the court's refusal to do so denied him his right to effective assistance of counsel.

{¶ 25} "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*

{¶ 26} "A plea of guilty waives any claim that the accused was prejudiced by ineffective assistance of trial counsel, except to the extent that the ineffectiveness alleged may have caused the guilty plea to be less than knowing, intelligent, and voluntary." *State v. Stivender*, 2011-Ohio-247, ¶ 15 (2d Dist.), citing *State v. Barnett*, 73 Ohio App.3d 244 (2d Dist. 1991). "Only if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to

trial will the judgment be reversed." *State v. Huddleson*, 2005-Ohio-4029, ¶ 9 (2d Dist.), citing *Hill v. Lockhart*, 474 U.S. 52, 52-53 (1985); *State v. Xie*, 62 Ohio St.3d 521, 524 (1992); and *State v. Davis*, 2000 WL 1086723 (12th Dist. Aug. 7, 2000).

{¶ 27} In this case, Davis entered a negotiated guilty plea with the State that specifically included an agreement that his offenses were not allied offenses of similar import. Davis has not alleged that his guilty pleas were less than knowingly, intelligently, and voluntarily entered or that he would not have entered his guilty pleas but for counsel's error in stipulating that the offenses were not allied offenses of similar import. Davis's written waiver and plea agreement, which was reviewed at the plea hearing, listed all of the offenses to which he was pleading guilty and stated that "All parties stipulate the above-listed offenses are not allied offenses." At no time did Davis indicate he did not understand that portion of his plea agreement or that he did not agree with it. Davis advised the trial court that he read and understood the agreement and signed it. Davis further acknowledged that he was satisfied with the advice of counsel and that he thoroughly understood the contents of the documents prior to entering his plea. Davis's intentional relinquishment of the opportunity to argue that he committed his offenses with the same conduct and the same animus was made knowingly, intelligently, and voluntarily. Further, Davis has made no effort to explain why the offenses should have merged or how he was prejudiced. Based on this record, Davis has not proven his claim of ineffective assistance of counsel.

{¶ 28} Davis also makes an argument in his second assignment of error that the trial court denied him the right to effective assistance of counsel by failing to grant his

request to have counsel removed and new counsel appointed. We disagree.

{¶ 29} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. " 'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.' " *State v. Cowans*, 87 Ohio St.3d 68, 73 (1999), quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). "Good cause" has been shown in situations where a defendant has demonstrated "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *State v. Blankenship*, 102 Ohio App.3d 534, 558 (12th Dist. 1995), citing *State v. Pruitt*, 18 Ohio App.3d 50, 57 (8th Dist. 1984).

{¶ 30} "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.' " *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996). "In addition, courts should 'balanc[e] . . . the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.' " *Id.* at 342-343, quoting *Jennings* at 148. "The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel." *State v. Carter*, 128 Ohio App.3d 419, 423

(4th Dist. 1998). "If his complaint is unreasonable, the trial judge may deny the requested substitution." *State v. Murphy*, 91 Ohio St.3d 516, 523 (2001), citing *State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus.

{¶ 31} A trial court's decision whether to replace appointed counsel is reviewed under an abuse-of-discretion standard. *State v. McNeill*, 83 Ohio St.3d 438, 452 (1998). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Apanovitch*, 33 Ohio St.3d 19, 22 (1987), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 32} Nearly three weeks after Davis pleaded guilty, a letter was mailed to the trial court purportedly from Davis. The entirety of the body of the letter stated as follows:

Aaron Davis I am Requesting a new counsel I feel Like my current Public Defender that's trying to Rail Road convince me to take the Plea there Trying to give me and I just feel unsafe him Representing me this is why a new counsel.

{¶ 33} At the time of sentencing, the trial court inquired as to whether Davis still wished to remove counsel. Davis responded that he did want to remove counsel and explained that they did not "see eye-to-eye." When asked what they did not see eye-to-eye on, Davis responded "Case-wise." The trial court asked Davis to explain, and Davis stated that he felt "like we're not on the same page" and felt that his attorney was "not in my best interests."

{¶ 34} Following this discussion, the trial court denied Davis's request, noting that Davis had already had three different attorneys appointed to his case. Davis had initially

been appointed counsel in Case No. 2022CR0432 and that attorney was subsequently appointed in Case No. 2022CR0458. Davis requested new counsel on September 8, 2023. At that time, Davis alleged that his attorney had told him there was nothing he could do for Davis and Davis alleged that the communication between them had broken down. Davis claimed he could explain everything that happened if he were appointed new counsel and that his current attorney had given up. Davis's counsel likewise filed a motion to withdraw citing that his communication with Davis was irretrievably broken. The trial court granted Davis new counsel.

{¶ 35} On January 8, 2024, Davis's second appointed counsel filed a motion to withdraw citing Davis's request that he withdraw from representation. The counsel further alleged that communications with Davis were ineffective, and that the attorney-client relationship was irretrievably broken. The trial court granted Davis's request for new counsel and a third attorney was appointed.

{¶ 36} Davis's request for a fourth appointed counsel occurred after he had pled guilty pursuant to a negotiated plea agreement but prior to sentencing. Although the trial court attempted to have Davis explain his basis for appointing new counsel, Davis was unable to articulate good cause. Rather, his allegations regarding appointed counsel were general and vague. At the sentencing hearing, both Davis's counsel and Davis had the opportunity to voice any issues or make any arguments in mitigation of punishment. The trial court imposed the State's recommended sentence pursuant to Davis's plea agreement. Notably, during his plea hearing, Davis advised the court that he was completely satisfied with counsel's advice and representation. Counsel competently

represented Davis by negotiating a plea agreement that dismissed two counts with firearm specifications, effectively reducing Davis's potential maximum sentence. The record does not reflect a complete breakdown in communications or irreconcilable conflict between Davis and counsel that jeopardized his right to the effective assistance of counsel. Under these circumstances, we find no basis to conclude that the trial court abused its discretion in denying Davis's request for new counsel.

{¶ 37} Davis's second assignment of error is overruled.

### IV. Conclusion

{¶ 38} Having overruled all of Davis's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.